Kellie McGOWAN, Petitioner

v.

PENNSYLVANIA DEPARTMENT OF
ENVIRONMENTAL PROTECTION,
Respondent.

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 2014.
Decided Oct. 28, 2014.
Reargument Denied Dec. 19, 2014.

Erin N. Kernan, Doylestown, for petitioner.

Jacqueline C. Barnett, Assistant Counsel, Harrisburg, for respondent.

BEFORE: MARY HANNAH LEAVITT, Judge, and PATRICIA A. McCULLOUGH, Judge, and ROCHELLE S. FRIEDMAN, Senior Judge.

OPINION BY Judge McCULLOUGH.

Kellie McGowan, Esquire (Requester), petitions for review of the January 6, 2014 final determination of the Office of Open Records (OOR), denying her request for certain information from the Department of Environmental Protection (Department) under the Pennsylvania Right–to–Know Law (RTKL).[1] Requester contends that the OOR erred in determining that the Department established that three documents (Document Nos. 11, 16, and 32) were exempt from disclosure under the predecisional deliberation exception at section 708(b)(10)(i)(A) of the RTKL, 65 P.S. § 67.708(b)(10)(i)(A).[2] We affirm in part and vacate and remand in part.

---

1. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

2. In pertinent part, section 708(b)(10)(i)(A) of the RTKL exempts from disclosure a record that "reflects ... [t]he internal, predecisional deliberations of an agency, its members, employees or officials ... including predecisional deliberations relating to ... contemplated or proposed policy or course of action or any research, memos or other documents used in the predecisional deliberations." 65 P.S. § 67.708(b)(10)(i)(A).

## I. Facts and Procedural History

The relevant facts and procedural history of this case are not in dispute and may be summarized as follows. By way of background, on December 8, 2006, local community members, non-profit organizations, and members of local governments submitted a petition requesting that the Department conduct an evaluation of the Perkiomen Creek basin for the purpose of re-designating the waterway as having "Exceptional Value Water." The petition sought to re-designate the Perkiomen Creek in order to receive additional environmental protection measures under the law, thus ensuring that the creek's water quality would be safeguarded. The Department reviewed the petition, and, in September 2013, issued a final report entitled, "Perkiomen Creek: Water Quality Standards Review Stream Redesignation Evaluation Report." This final report was made available for public comment and recommends that the Perkiomen Creek re-tain its current classification. (Brief for Requester at 7, n. 1.)

On October 7, 2013, Requester filed a request with the Department, seeking:

1) All data collected, including notes and correspondence, for the Perkiomen Creek Water Quality Standards Review Stream Re-designation Evaluation Report.

2) All correspondence, memorandum and documents, including electronic correspondence, related to the Perkiomen Creek Water Quality Standards Review Stream Re-Designation Evaluation Report.

(Reproduced Record (R.R.) at 10a.)

On November 14, 2013, after requesting a 30-day extension to respond to the request, *see* section 902 of the RTKL, 65 P.S. § 67.902,[3] the Department granted the request in part, providing Requester with 634 pages of responsive records and a compact disc. The Department also de-

---

3. This provision states:

> 902. Extension of time
> (a) Determination.—Upon receipt of a written request for access, the open-records officer for an agency shall determine if one of the following applies:
> (1) the request for access requires redaction of a record in accordance with section 706;
> (2) the request for access requires the retrieval of a record stored in a remote location;
> (3) a timely response to the request for access cannot be accomplished due to bona fide and specified staffing limitations;
> (4) a legal review is necessary to determine whether the record is a record subject to access under this act;
> (5) the requester has not complied with the agency's policies regarding access to records;
> (6) the requester refuses to pay applicable fees authorized by this act; or
> (7) the extent or nature of the request precludes a response within the required time period.

> (b) Notice.—
> (1) Upon a determination that one of the factors listed in subsection (a) applies, the open-records officer shall send written notice to the requester within five business days of receipt of the request for access under subsection (a).
> (2) The notice shall include a statement notifying the requester that the request for access is being reviewed, the reason for the review, a reasonable date that a response is expected to be provided and an estimate of applicable fees owed when the record becomes available. If the date that a response is expected to be provided is in excess of 30 days, following the five business days allowed for in section 901, the request for access shall be deemed denied unless the requester has agreed in writing to an extension to the date specified in the notice.
> (3) If the requester agrees to the extension, the request shall be deemed denied on the day following the date specified in the notice if the agency has not provided a response by that date.
> 65 P.S. § 67.902.

nied the request in part, arguing that certain records were exempt from disclosure as records that reflect the internal, predecisional deliberations of an agency and that other records were protected by the attorney-client privilege and/or attorney work-product doctrine. To support its denial, the Department provided Requester with a "Privilege/Exemption/Redaction Log" (Log), which specifically identified the withheld records and stated the legal basis for non-disclosure.

With respect to Document No. 16, the Log identified a document consisting of four pages, dated August 1, 2013, and listed the "Record Type" as an "Internal Briefing Memo for Secretary Re: Hosensack Creek" for "[p]reparation for meeting with Aaron Cohen (Arena Strategies), John T. Neilson (Audubon Land Development Corp.), Stephen Harris (Attorney for Geryville Materials) and David Rittenhouse (Geryville Materials)." The Log noted that the recipients and author of Document No. 16 were: "[the Department] Staff, briefing author is Tony Shaw." Further, in the description column, the Log stated that Document No. 16 concerns the "[p]otential re-designation of Hosensack Creek, which is part of the stream evaluation report for Perkiomen Creek" and asserted exemption under the predecisional deliberation exception. (R.R. at 18a.)

Regarding Document No. 11, the Log identified the record as a one-page e-mail, dated September 6, 2013, and listed the author and recipients as "[the Department] staff, Sean Gimbel to Tony Shaw." The Log described the contents of Document No. 11 as "[r]egarding outreach to a member of the public about the stream evaluation report when it is publically available." (R.R. at 18a.)

As to Document No. 32, the Log identified the record as a one-page email, with one attachment, dated March 5, 2012. The Log listed the authors and recipients of this correspondence as "[the Department] staff, Robert Altenburg to Patricia Allan (with attachment); Patricia Allan to Sean Gimbel; Sean Gimbel to Patricia Allan." The Log stated that Document No. 32 contained information "[r]egarding the timing of stream evaluation." (R.R. at 20a.) The Log asserted that Documents Nos. 11 and 32 were exempt under the predecisional deliberation exception. (R.R. at 18a, 20a.)

On December 5, 2013, Requester appealed to the OOR, challenging the Department's decision not to disclose Documents Nos. 11, 16, and 32. On December 6, 2013, the OOR invited both parties to supplement the record and directed the Department to notify interested third parties of their ability to participate in the proceedings.

On a date not ascertainable from the record, Requester responded with a memorandum explaining why she believed that the withheld documents did not reflect internal, predecisional deliberations and requesting that the OOR conduct *in camera* review. On December 17, 2013, the Department submitted a position statement, along with the supporting affidavits of Sean Gimbel, Executive Assistant to the Deputy for the Office of Water Management, and Tony Shaw, Monitoring Section Chief for the Division of Water Quality Standards.

In his affidavit, Shaw stated that he is the author of Document No. 16 and averred, in pertinent part, as follows:

12. The briefing document, identified in Item 16 in the [Log], contains and reflects the internal deliberations relating to a predecisional petition review and draft report as to whether the Perkiomen Creek watershed should be redesignated and does not contain any final decision, determination or final Depart-

ment action as to whether redesignation as to this watershed is warranted.

13. The purpose of preparing the briefing record was to summarize the various internal, predecisional deliberations of Department staff for further discussions and consideration by the Secretary and other Department employees for purposes of arriving at a final Department report for public comment.

14. The contents of the internal briefing memo [are] not a mere agenda but a discussion and evaluation of the issues and factors under consideration by the Department in arriving at a final draft report for public comment.

15. The internal briefing memo not only reflects and contains the internal, predecisional deliberation of the Department, but was relied upon in further internal, predecisional deliberative discussions for purposes of arriving at a draft report for public comment.

16. The contents of the internal briefing memo reflect and contain the internal, predecisional deliberation of the Department as to whether re-designation of the Perkiomen Creek watershed would be appropriate.

17. With the exception of the last draft report, noticed for public comment on September 18, 2013, titled, "Perkiomen Creek: Water Quality Standards Review—September, 2013," none of the other draft forms of the report represent a final decision of [the Department] since they were continuously revised and discussed internally amongst Departmental personnel.

(R.R. at 45a.)

In his affidavit, Gimbel attested that Documents Nos. 11 and 32 reflect predecisional deliberations regarding the Department's decision to conduct public outreach and the timing of such outreach. Specifically, Gimbel averred as follows:

12. The excepted records [Nos.] 11 and 32 reflected in the privilege log, contain and reflect the internal deliberations relating to a predecisional, petition review and draft report as to public outreach and public evaluation of the stream evaluation reports as to whether the Perkiomen Creek watershed should be redesignated and timing issues associated with the release of the last draft report for public comment and does not contain any final decisions, determination or final Department action as to how and whether public outreach should be accomplished and at what point should the report be issued for public comment (i.e. timing).

13. Item 11 describes a proposed process for a public communication about a record that is undergoing predecisional and internal review.

14. Item 32 relates to a draft public notice concerning the Department's intentions to evaluate the stream designations of Perkiomen Creek and other streams. Item 32 also refers to a record that was undergoing internal review and revisions prior to its release to the public.

15. The purpose of these e-mails was to share and seek various internal, predecisional deliberations of Department staff for further discussions and consideration by other Department employees for purposes of arriving at a final Department position on public outreach and a schedule for the releasing of the draft report for public comment.

16. The contents of the internal e-mails reflect a discussion and evaluation of issues and factors under consideration by the Department in arriving at final decisions on public outreach and timing.

17. The e-mails not only reflect and contain the internal, predecisional de-

liberation of the Department but were relied upon in further internal, predecisional deliberative discussions for purposes of arriving at final decisions pertaining to public outreach and timing.

18. To not except this record from production would reveal the Department's predecisional, deliberative discussions as to the multiple factors and considerations entertained by the Department as to these issues.

(R.R. at 42a–43a.)

On January 6, 2014, the OOR issued a final determination denying Requester's appeal and attempt to gain access to Documents Nos. 11, 16, and 32. The OOR concluded:

> Here, the Department's evidence shows that Document [N]os. 11 and 32 are internal e-mails discussing the proposed scope and timing of the Department's public outreach efforts with respect to the dissemination of the Perkiomen Creek water quality evaluation report. Similarly, Document [N]o. 16 is an internal Department briefing discussing whether to redesignate the Perkiomen Creek watershed. Based on the evidence submitted, the Department has met its burden of proof that the records are internal to the Department, reflect discussions prior to a decision, and pertain to proposed courses of action. Accordingly, Document [N]os. 11, 16 and 32 are exempt from disclosure pursuant to [s]ection 708(b)(10) of the RTKL.

(Final Determination at 5.) In making its determination, the OOR relied exclusively on the Department's Log and affidavits and did not conduct *in camera* review.

4. Our standard of review of determinations made by appeals officers under the RTKL is *de novo,* and our scope of review is plenary.

## II. Discussion

 On appeal to this Court,[4] Requester argues that the Department failed to establish that Documents Nos. 11, 16, and 32 qualified for exemption as internal, predecisional deliberations.

 Initially, we note that the objective of the RTKL "is to empower citizens by affording them access to information concerning the activities of their government." *SWB Yankees LLC v. Wintermantel,* 615 Pa. 640, 45 A.3d 1029, 1042 (2012). Pursuant to section 305 of the RTKL, a record in the possession of a Commonwealth agency, like the Department in this case, shall be presumed to be a public record, unless: the record is exempt under section 708 of the RTKL; the record is protected by a privilege; or the record is exempt from disclosure under any other federal or state law or regulation or judicial order. Section 305 of the RTKL, 65 P.S. § 67.305. Because the RTKL "is remedial legislation designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions, the exemptions from disclosure must be narrowly construed." *Bowling v. Office of Open Records,* 990 A.2d 813, 824 (Pa.Cmwlth.2010) (*en banc* ), *aff'd,* 621 Pa. 133, 75 A.3d 453 (2013) (*"Bowling I"*).

 An agency bears the burden to prove, by a preponderance of the evidence, that a record is protected from disclosure under one of the enumerated exceptions or contains privileged material. Section 708(a)(1) of the RTKL, 65 P.S. § 67.708(a)(1); *Department of Transportation v. Drack,* 42 A.3d 355, 364 (Pa.

*Bowling v. Office of Open Records,* 621 Pa. 133, 75 A.3d 453, 477 (2013) (*"Bowling II"*).

Cmwlth.2012). In appeals involving a Commonwealth agency, section 1101(b)(1) of the RTKL charges an OOR appeals officer with the obligation of determining, in the first instance, whether an agency has met its burden of proof. 65 P.S. § 67.1101(b)(1). "Testimonial affidavits found to be relevant and credible may provide sufficient evidence in support of a claimed exemption." *Heavens v. Department of Environmental Protection,* 65 A.3d 1069, 1073 (Pa.Cmwlth.2013).

> Affidavits are the means through which a governmental agency ... justifies nondisclosure of the requested documents under each exemption upon which it relied upon. The affidavits must be detailed, nonconclusory, and submitted in good faith.... Absent evidence of bad faith, the veracity of an agency's submissions explaining reasons for nondisclosure should not be questioned.

*Office of the Governor v. Scolforo,* 65 A.3d 1095, 1103 (Pa.Cmwlth.2013) (*en banc*) (citation omitted). In addition, a privilege log, which typically lists the date, record type, author, recipients, and a description of the withheld record, can serve as sufficient evidence to establish an exemption, especially where the information in the log is bolstered with averments in an affidavit. *See Heavens,* 65 A.3d at 1075–77.

In pertinent part, section 708(b)(10)(i)(A) of the RTKL exempts from disclosure:

> (10) (i) A record that reflects:
>
> (A) The internal, predecisional deliberations of an agency, its members, employees or officials or predecisional deliberations between agency members, employees or officials and members, employees or officials of another agency, including predecisional deliberations relating to a budget recommendation, legislative proposal, legislative amendment, contemplated or proposed policy or course of action or any research, memos or other documents used in the predecisional deliberations.

65 P.S. § 67.708(b)(10)(i)(A).

■■ "The deliberative process privilege benefits the public and not the officials who assert the privilege. The privilege recognizes that if governmental agencies were forced to operate in a fishbowl, the frank exchange of ideas and opinions would cease and the quality of administrative decisions would consequently suffer." *Joe v. Prison Health Services, Inc.,* 782 A.2d 24, 33 (Pa. Cmwlth.2001). To prove the predecisional deliberation exception, an agency is required to show three things: "(1) the information is internal to the agency; (2) the information is deliberative in character; and, (3) the information is prior to a related decision, and thus 'predecisional.' " *Carey v. Department of Corrections,* 61 A.3d 367, 379 (Pa.Cmwlth.2013). At issue in this case are the first and second elements.

### A. Information Internal to the Department

Requester first argues that the Department failed to demonstrate that Documents Nos. 11, 16, and 32 were "internal" to its agency. (Brief for Requester at 14–19.) More specifically, Requester contends that the Department's affidavits were conclusory; the Log and affidavits failed to affirmatively state when the documents were created; and the Log and affidavits did not prove that the documents were not disclosed to third parties.

■ Under section 708(b)(10)(i)(A) of the RTKL, an agency can satisfy the "internal" element by, among other things, demonstrating that the predecisional deliberations occurred within "the agency, its members, employees or officials...." 65

P.S. § 67.708(b)(10)(i)(A). Section 708(b)(10)(i)(A) of the RTKL also considers documents to be "internal" when the predecisional deliberations occur "between agency members, employees or officials and members, employees or officials of another agency...." *Id. See Kaplin v. Lower Merion Township,* 19 A.3d 1209, 1216 (Pa.Cmwlth.2011) (explaining that section 708(b)(10)(i)(A) covers two distinct situations: one involves deliberative communication within an agency and the other involves deliberative communication between two agencies).

In *Kaplin,* the requester filed a request under the RTKL seeking documents related to a pending conditional use application that a company filed with the township's board of commissioners. The township denied the request, asserting in a written response that nine pages of documents contained communications between the township's staff and the board of commissioners regarding the board's decision on the conditional use application.

On appeal to this Court, the requester argued that the documents were not internal to township. We disagreed, concluding that the township adequately demonstrated that the withheld documents were "internal" documents. In so holding, this Court first determined that the advice the township's staff provided to the board of commissioners regarding the logistics of issuing a decision on the conditional use application reflected internal deliberations occurring within the township as a single agency. We further determined that even if the township's staff was to be considered a separate agency from the board, the documents were still internal deliberations because they reflected communications between agency members and employees of another agency. *Id.* at 1216.

■ In this case, the Department's Log demonstrates that Documents Nos. 11, 16, and 32 are records that are "internal" to the Department. In each instance, the Log detailed the author and recipients of the e-mails and memo, confirming that only members of the Department's staff created, sent, and received the records. (R.R. at 18a, 20a.) The internal nature of the withheld documents is further established through the Department's affidavits. In paragraph 11, Gimbel attested that based upon his personal knowledge, Document No. 11 is an e-mail "from [Department] staff to Tony Shaw" and that Document No. 32 is an e-mail "amongst and between [Department] staff." (R.R. at 42a.) In paragraphs 10 and 11 of Shaw's affidavit, Shaw explains that he was the author of Document No. 16, "an internal briefing memo," and that the memo was prepared for "the Department's Secretary and other Department employees." (R.R. at 44a.)

■ To the extent that Requester argues that the Department's evidence must affirmatively list the date of creation and demonstrate that the documents had not been disclosed to third parties, we conclude that these omissions do not render the affidavit fatally defective. Indeed, the date of the documents' production has little, if anything, to do with the internal nature of the documents, and there is no concrete evidence to suggest that the documents have been disclosed outside the Department. Although the Log lists Document No. 16 as an internal briefing memo to prepare the Secretary for a meeting with third parties, it would be conjecture for this Court to assume, in the absence of additional evidence, that the Secretary turned over Document No. 16 to those third parties.

■ Where, as here, no evidence has been presented to show that the Department acted in bad faith, the averments in

the Department's affidavits should be accepted as true. *Scolforo*, 65 A.3d at 1103. Viewing the detailed, nonconclusory statements in the Log and the Department's affidavits, we conclude that the Department's evidentiary presentation is more than adequate to sustain the inference and establish that Documents Nos. 11, 16, and 32 are internal documents—and have remained internal documents—of the Department.

## B. Information Deliberative in Character

### 1. *Documents Reflecting Deliberations of a Particular Decision*

Requester asserts that the Department failed to establish that the withheld documents were "deliberative" and generated in contemplation of a "particular decision." (Brief for Requester at 19–23.) Requester also asserts that Documents Nos. 11 and 32 cannot be considered "deliberative decisions" because they were not directly related to the Department's final report on the re-designation of Perkiomen Creek that was issued for public comment. (*Id.*)

■ In order to demonstrate that the withheld documents are deliberative in character, an agency must "submit evidence of specific facts showing how the information relates to deliberation of a particular decision." *Carey*, 61 A.3d at 379. In *Scolforo*, this Court determined that "the terms *reflects* and *deliberations* in [s]ection 708(b)(10)(i)(A) supports the conclusion that [s]ection 708(b)(10)(i) codifies the deliberative process privilege" as that principle was elucidated by our Supreme Court in *Commonwealth v. Vartan*, 557 Pa. 390, 733 A.2d 1258, 1263 (1999) (plurality). *Scolforo*, 65 A.3d at 1101–02 (emphasis in original). The *Scolforo* court concluded that the predecisional deliberation privilege protects information where an agency demonstrates that the informa-

tion merely *reflects*, or, in other words, "mirrors" or "shows," that the agency engaged in the deliberative *process;* it does not require that an agency establish that the information itself *reveals* or "discloses" deliberative communication. *Scolforo*, 65 A.3d at 1101–02. Further, section 708(b)(10)(i)(a) of the RTKL exempts all predecisional deliberations where agency officials and/or employees "contemplate" or "propose" a future "course of action." 65 P.S. § 67.708(b)(10)(i)(a).

In *Scolforo*, the Office of the Governor (Office) redacted certain information from the Governor's calendar, asserting that this information was protected by the predecisional deliberation exception. For support, the Office submitted an affidavit, which stated that the redactions: "were reflective of internal deliberations that preceded decisions related to subjects including the transition into the new administration, personnel, budgetary and policy decisions, related courses of actions and implementation of changes in the direction of the administration." 65 A.3d at 1104. This Court concluded that the affidavit was legally insufficient to satisfy the elements of the predecisional deliberation exemption. We explained as follows:

> The [a]ffidavit contains no further specifics. It is, therefore, without more, not sufficient to prove that the records are exempt. While the [a]ffidavit tracks the language of the exception it presupposes, rather than proves with sufficient detail, that the redacted [c]alendar entries are reflective of internal deliberations and, therefore, exempt from disclosure. It is not enough to include in the [a]ffidavit a list of subjects to which internal deliberations may have related. The [a]ffidavit must be specific enough to permit the OOR or this Court to ascertain how disclosure of the entries would reflect the internal deliberations

on those subjects. Because this [a]ffidavit is not detailed, but rather conclusory, it is not sufficient, standing alone, to prove that the [c]alendar entries are exempt from disclosure.

*Id.* (citation omitted).

 In this case, the affidavits of Shaw and Gimbel contain specific facts establishing that the withheld information relates to the Department's deliberation of anticipated, future agency action. Although the Log listed Document No. 16 as an internal briefing memo, the averments in Shaw's affidavit demonstrate that the substantive content of that memo consists of un-finalized and summarized rough draft reports of the Perkiomen Creek re-designation report. The averments in Shaw's affidavit additionally demonstrate that Document No. 16 comprised rough draft reports that were undergoing revision and further discussion by the Department of the relevant factors and issues while the Department was in the process of arriving at a final report and recommendation as to whether re-designation of Perkiomen Creek would be appropriate. (R.R. at 45a.)

Furthermore, while Documents Nos. 11 and 32 generally concern public outreach and the timing for release of the final report for public comment, Gimbel's attestations demonstrate that Document No. 11 describes the Department's proposed process for public comment and Document No. 32 relates to a drafted public notice. In addition, Gimbel averred that both documents contain and reflect deliberations related to a petition review and draft report with respect to public evaluation and timing issues regarding the release of the final report. According to Gimbel's averred statements, the purpose of Docu-ments Nos. 11 and 32 was to share the Department's prior deliberative discussions and elicit further discussion of the underlying issues and factors that impact the Department's assessments on such matters, in order to ultimately arrive at the Department's final position on how to handle public outreach and evaluation and when to release the final report for public comment. (R.R. at 42a.)

Accepting the above averments as true, we conclude that, unlike the conclusory affidavit in *Scolforo*, the Department's affidavits specifically detail the manner in which the withheld documents relate to the Department's contemplation of a future course of agency action for purposes of section 708(b)(10)(i)(A) of the RTKL. In contrast to *Scolforo*, the Department's affidavits go beyond merely listing the subjects involved in its internal deliberations. Instead, the affidavits explain in particular fashion how disclosure of Documents Nos. 11, 16, and 32 would reflect the Department's deliberative process while the Department utilizes drafted documents to contemplate the feasibility of re-designating Perkiomen Creek, decide when to release its final report to the public for comment, and determine the manner in which it will conduct public outreach and evaluation. *See Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 866 (D.C.Cir.1980) (interpreting Exemption 5 of the Freedom of Information Act (FOIA), 5 U.S.C. § 552(b)(5))[5] (stating that the predecisional deliberation exception "covers recommendations, draft documents, proposals, suggestions, and other subjective documents.... Documents which are protected by the privilege are those which would inaccurately reflect or

---

5. Exemption 5 of the FOIA incorporates the governmental privilege, developed in discovery cases, to protect documents containing advisory opinions and recommendations or reflecting deliberations comprising the process by which government policy is formulated. *Mead Data Central, Inc. v. Department of Air Force,* 566 F.2d 242, 256 (D.C.Cir.1977).

prematurely disclose the views of the agency").

 Contrary to Requester's contention with regard to Documents Nos. 11 and 32, there is nothing in section 708(b)(10)(i)(A) of the RTKL that requires a predecisional deliberation by an agency to be one that results in an official adjudication or decision, such as the Department's final report on the re-designation of Perkiomen Creek for public comment. Rather, by its plain terms, the exemption is much broader, encompassing the deliberation process where agency officials and/or employees merely "contemplate" or "propose" a "course of action." 65 P.S. § 67.708(b)(10)(i)(A). *See also Gold Anti-Trust Action Committee v. Board of Governors of the Federal Reserve System,* 762 F.Supp.2d 123, 135–36 (D.D.C.2011) (interpreting Exemption 5 of the FOIA) ("[E]ven if an internal discussion does not lead to the adoption of a specific government policy, its protection under [the predecisional deliberation exception] is not foreclosed as long as the document was generated as part of a definable decision-making process."). In any event, the Department issued an official "decision" in the form of a final report for public comment, and the Department's contemplated, proposed courses of action with respect to public outreach and the timing for release of the final report were matters ancillary to and intertwined with this decision.

For these reasons, we conclude that the Department's evidence demonstrated that the withheld documents were deliberative in character and involved contemplated courses of agency action.[6]

### 2. Purely Factual Material located within Information that is Deliberative in Character

Citing *Vartan,* Requester contends that even if Documents Nos. 16 and 32 are considered to be deliberative in character, the Department failed to demonstrate that these documents do not include information that is purely factual.

In *Vartan,* a plurality opinion, our Supreme Court summarized the characteristics of the common law deliberative process privilege. Citing and quoting *Environmental Protection Agency v. Mink,* 410 U.S. 73, 87–88, 93, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973), where the United States Supreme Court construed the predecisional deliberative process exception codified in Exemption 5 of the FOIA, the *Vartan* court pronounced:

**Information that is purely factual, even if decisionmakers used it in their deliberations is usually not protected.... [A]bsent a claim that disclosure would jeopardize state secrets, memoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context would generally be available [for disclosure].**

*Vartan,* 733 A.2d at 1264 (emphasis added)

---

6. As a reoccurring motif throughout her brief, Requester also maintains that because the OOR never reviewed the Department's final report for public comment, and this report was not included in the record, the OOR could not have properly assessed whether Document Nos. 11, 16, and 32 qualified under the predecisional deliberation exception as a matter of fact. Having already concluded that the Department's Log and affidavits suffi-ciently establish that Document Nos. 11, 16, and 32 are internal and deliberative in nature, we discern no error on the part of the OOR in failing to conduct a comparative analysis of these documents with the final report. *See Heavens,* 65 A.3d at 1073 & 1075–77 (concluding that testimonial affidavits and privilege logs can constitute sufficient evidence in support of a claimed exemption).

(citing and quoting *Mink*).[7]

Expounding on this concept, the federal Court of Appeals for the District of Columbia has explained: "[The] deliberative process privilege ... does not authorize an agency to throw a protective blanket over all information.... Purely factual reports and scientific studies cannot be cloaked in secrecy by an exemption designed to protect only those internal working papers in which opinions are expressed and policies formulated and recommended." *American Radio Relay League, Inc. v. Federal Communications Commission*, 524 F.3d 227, 238 (D.C.Cir.2008) (interpreting Exemption 5 of the FOIA). In other words, because the disclosure of purely factual information is disconnected from the deliberative process, it generally "would not threaten agency deliberations." *Judicial Watch v. U.S. Department of State*, 875 F.Supp.2d 37, 44 (D.D.C.2012) (interpreting Exemption 5 of the FOIA).

In *Carey*, this Court adopted our Supreme Court's discussion in *Vartan* that purely factual material is severable and, in general, should be disclosed even when it is located within a document containing exempted predecisional deliberations. 61 A.3d at 378–80. Although it can be difficult in some instances to segregate purely factual material from deliberative communications, most of the disputes

> may be able to be decided by application of the simple test that factual material must be disclosed but advisory material,

containing opinions and recommendations, may be withheld. The test offers a quick, clear, and predictable rule of decision, but courts must be careful not to become victims of their own semantics. [The exemption] is intended to protect the deliberative process of government and not just deliberative material. Perhaps in the great majority of cases that purpose is well served by focusing on the nature of the information sought.

*Mead Data Central, Inc. v. Department of Air Force*, 566 F.2d 242, 256 (D.C.Cir. 1977) (interpreting Exemption 5 of the FOIA).

Because this Court in *Carey* adopted our Supreme Court's discussion of predecisional deliberations in *Vartan*, and *Vartan* relied upon the United States Supreme Court's decision in *Mink*, we find the federal case law above interpreting Exemption 5 of the FOIA to be persuasive. *See Bowling I*, 990 A.2d at 819 (seeking guidance from the FOIA and interpretive case law because the FOIA is the federal counterpart to the RTKL). *See also Department of Public Welfare v. Eiseman*, 85 A.3d 1117, 1128 (Pa.Cmwlth.2014) (*en banc*) (same).

██ In this case, as discussed above, the averments in Shaw's affidavit show that Document No. 16 is deliberative in nature, containing a summarized version of rough drafts of the Department's final report regarding whether or not to re-desig-

---

7. In *Vartan*, the plaintiff entered into a lease agreement with the Administrative Office of Pennsylvania Courts (AOPC), and AOPC decided to terminate the lease pursuant to a provision in the lease. The plaintiff filed suit in the board of claims and issued a notice of deposition, accompanied with a subpoena, on a former Chief Justice of the Pennsylvania Supreme Court. AOPC filed a motion to quash the subpoena based on the deliberative process privilege.

On appeal, a plurality of the Supreme Court held that the deliberative process privilege may be invoked to prohibit disclosure of the deliberations of the members of that court regarding the signing of the lease and its termination. The *Vartan* court noted that there were no exceptional circumstances present to take the former Chief Justice's deposition and, accordingly, quashed the subpoena.

nate Perkiomen Creek. Likewise, the averments in Gimbel's affidavit demonstrate that Document No. 32 also is deliberative in nature because it concerns the Department's thought process in determining when to release the final report for public comment.

However, on the present record, it is not clear from Shaw's and Gimbel's attested contentions that the information in Documents Nos. 16 and 32 exclusively contain deliberative communications. Although an evidentiary inference to this effect could arguably be made on the existing record, given the facts that the Department identified Document No. 16 as a "briefing memorandum" of summarized information; Gimbel's relatively lengthy affidavit states that Document No. 32 includes an attachment and concerns a "draft public notice" and "draft report;" and the Department conducted environmental analysis of Perkiomen Creek's water quality, it is equally plausible that Documents Nos. 16 and 32 contain qualitative or statistical data that can be severed from the deliberative portions of those documents. *See Commonwealth v. Borrin*, 12 A.3d 466, 475 (Pa.Super.2011) *(en banc)*, *aff'd* 622 Pa. 422, 80 A.3d 1219 (2013) ("Where the evidence of record equally supports two inconsistent inferences, it proves neither."). *See also Carey*, 61 A.3d at 379–80 (concluding that

the predecisional deliberation exception was not established ·where the agency failed to "submit sufficient proof to show that all communications with any other government officials are 'deliberative' than factual in nature."). Therefore, we vacate the OOR's determination, in part, and, in light of the ambiguous nature of the current record and Requester's previous request for *in camera* review, we remand to the OOR for *in camera* review to determine whether Documents Nos. 16 and 32 contain severable information that is purely factual.

■■■ On remand, the Department is directed to produce Documents Nos. 16 and 32 for *in camera* review so that the OOR can ascertain, in the first instance, whether these documents contain purely factual material.[8] If, during its *in camera* inspection, the OOR discovers factual material within Documents Nos. 16 and/or 32, we note that factual material can still qualify as deliberative information if its "disclosure would so expose the deliberative process within an agency that it must be deemed exempted;" or, in other words, when disclosure of the factual material "would be tantamount to the publication of the [agency's] evaluation and analysis." *Trentadue v. Integrity Committee*, 501 F.3d 1215, 1228–29 (10th Cir.2007) (citations omitted).[9] In the event the OOR

---

**8.** *See Office of Open Records v. Center Township*, 95 A.3d 354, 365–71 (Pa.Cmwlth.2014) *(en banc)* (concluding that the OOR has the statutory authority to conduct *in camera* review upon request of one of the parties). *See also Manchester v. Drug Enforcement Administration*, 823 F.Supp. 1259, 1265 (E.D.Pa. 1993) (concluding that *"in camera* inspection may be appropriate if agency affidavits insufficiently detail the justification for nondisclosure, thereby preventing a meaningful review...."); *Department of Labor and Industry v. Heltzel*, 90 A.3d 823, 834 (Pa.Cmwlth.2014) *(en banc)* (remanding to allow the OOR, as the initial fact-finder, to evaluate the applicability of an exception in the first instance).

**9.** In *Trentadue*, the requester sought reports, rulings, and other documents from a federal agency regarding their investigation into an inmate's death in his jail cell. On appeal, the United States Court of Appeals for the Tenth Circuit found that portions of the withheld documents from an inspector general to an agency committee contained the inspector general's opinion concerning the proper scope of the agency's authority and recommended course of action with respect to several agency individuals who were accused of misconduct and, therefore, was exempted by the deliberative process privilege. However, the Tenth Circuit also found that a significant

determines that severable, factual material exists within Documents Nos. 16 and/or 32, which would not be tantamount to publicizing the Department's evaluation and analysis, the OOR shall direct the Department to redact the remaining, deliberative portions of those documents because the Department has already established their exemption from disclosure. *See* section 706 of the RTKL, 65 P.S. § 67.706 ("If the information which is not subject to access is an integral part of the public record . . . and cannot be separated, the agency shall redact from the record the information which is not subject to access, and the response shall grant access to the information which is subject to access. The agency may not deny access to the record if the information which is not subject to access is able to be redacted.").[10] *See also Levy v. Senate of Pennsylvania,* 34 A.3d 243, 254 (Pa.Cmwlth.2011) (*en banc*), *aff'd in part and reversed in part on, other grounds by* 619 Pa. 586, 65 A.3d 361 (2013) (sanctioning, after *in camera* review, the redaction of exempted material within certain documents and the release or disclosure of non-exempted information within those same documents). The OOR shall have ninety days (90) to adjudicate this matter.

## III. Conclusion

For the above-stated reasons, we conclude that the Department's Log and affidavits established that Documents Nos. 11, 16, and 32 were internal to the agency and deliberative in nature. However, based on the existing record, we conclude that a genuine dispute exists as to whether Document Nos. 16 and 32, although reflecting predecisional deliberations, contain purely factual material. Accordingly, we affirm the final determination of the OOR in part and vacate and remand in part.

## *ORDER*

AND NOW, this 28th day of October, 2014, the January 6, 2014 final determination of the Office of Open Records (OOR) is affirmed in part and vacated and remanded in part. The case is remanded to the OOR to conduct *in camera* review of Document Nos. 16 and 32. The OOR is

---

portion of the documents did not reflect predecisional deliberations and were purely factual, namely, a summary of historical facts about the inspector general's investigation into the inmate's death; a list of individual involved in preparing a response to the agency; and general background information on the death and subsequent investigations. In regard to the information that was purely factual, the Tenth Circuit determined that "this material is not inextricably intertwined with deliberative material . . . [and] disclosure of these facts would not expose the deliberative process under any reasonable definition of that term." 501 F.3d at 1230–31. Accordingly, the Tenth Circuit concluded that the purely factual material was severable and ordered its disclosure.

10. In its entirety, this provision states:
 If an agency determines that a public record, legislative record or financial record contains information which is subject to access as well as information which is not subject to access, the agency's response shall grant access to the information which is subject to access and deny access to the information which is not subject to access. If the information which is not subject to access is an integral part of the public record, legislative record or financial record and cannot be separated, the agency shall redact from the record the information which is not subject to access, and the response shall grant access to the information which is subject to access. The agency may not deny access to the record if the information which is not subject to access is able to be redacted. Information which an agency redacts in accordance with this subsection shall be deemed a denial under Chapter 9.
 65 P.S. § 67.706.

directed to adjudicate the matter within ninety (90) days of the date of this order.

Jurisdiction relinquished.