# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Department of Corrections,      :
           Petitioner     :
                     :
         v.         :   No. 1043 C.D. 2016
                     :   Submitted: November 23, 2016
Ben Fiorillo,           :
           Respondent  :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE JAMES GARDNER COLINS, Senior Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**         **FILED: May 1, 2017**

The Department of Corrections (Department) petitions for review of a June 2, 2016 Final Determination of the Pennsylvania Office of Open Records (OOR), requiring the Department to produce certain documents responsive to a request made by Ben Fiorillo (Requester) pursuant to the Right-to-Know Law[1] (RTKL). The Department maintains the records are protected from disclosure by the attorney-client privilege, the attorney work product doctrine, and/or the predecisional, internal deliberations exception. For the reasons set forth herein, we affirm in part and reverse in part.

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

## I. Background

On December 19, 2014, Requester submitted a request to the Department seeking, *inter alia*, communications between Department officials "pertaining to inmate health problems" at the State Correctional Institution – Fayette (SCI-Fayette) and communications between Department officials and the Department of Health "pertaining to the review of SCI-Fayette inmate medical records." (R.R. at 2a-3a.) Following an extension, the Department denied the request in its entirety, citing nine grounds for exemption, including, *inter alia*, the attorney-client privilege, the attorney work product doctrine, and the predecisional, internal deliberations exception. (R.R. at 4a-7a.)

Requester appealed to OOR on February 13, 2015. (R.R. at 1a, 34a.) On February 27, 2015, the Department submitted its position statement and amended response. (R.R. at 40a-173a; R.R. 1c-137c.[2]) Along with the amended response, the Department produced a number of documents it determined were responsive, along with affidavits by Susan McNaughton, Department press secretary; Christopher Oppman, director of the Bureau of Health Care Services; and Chase M. Defelice, assistant counsel for the Department, claiming the documents either did not exist or fell within one of the previously asserted exceptions and therefore were being withheld. (Id.) On March 26, 2015, OOR directed the Department to produce the documents in question for *in camera* review. (R.R. at 175a.) Pursuant to that order, the Department provided OOR with the requested documents and an *in camera* inspection index. (R.R. at 180a-96a.)

---

[2] References to the Second Supplemental Certified Record, which is contained in the Reproduced Record, are indicated by the letter "*c*."

OOR issued its Final Determination on June 2, 2016, granting in part, denying in part, and dismissing as moot in part Requester's Appeal. OOR dismissed the appeal as moot to the extent it dealt with documents that the Department produced during the pendency of the appeal. (Final Determination at 4.) It concluded three documents (Items 14, 61, and 64) were not protected by the attorney-client privilege or attorney work product doctrine and ordered those documents be disclosed. (Id. at 4-6.) In addition, OOR found the Department failed to meet its burden of proof that the remaining documents constituted internal, predecisional deliberations, with limited exception. (Id. at 6-8.) As such, OOR ordered the Department to produce the records within 30 days. It is from this decision that the Department now appeals.[3]

On appeal, the Department argues OOR erred by ordering access to the emails. Specifically, it argues Items 61 and 64 consist of legal counsel's instructions and analysis directed to Department staff, which is protected by the attorney-client privilege and/or work product doctrine.[4] The Department also argues that Items 1-12, 15-35, 38-41, and 43-67 are deliberative in nature in that Department staff discussed planning and strategy, and are therefore protected as predecisional, internal communications.

In response, Requester argues the Department failed to satisfy its burden of proving either privilege or exception applies. He argues there is no evidence that the withheld emails contain legal advice or were created for the purpose of

---

[3] On appeal, our standard of review is de novo, meaning we may substitute our own fact-finding for that of OOR, and our scope of review is broad or plenary. Bowling v. Office of Open Records, 75 A.3d 453, 477 (Pa. 2013).

[4] The Department is not challenging OOR's determination that Item 14 is not protected by the attorney-client privilege or work product doctrine.

obtaining legal advice. Nor do the emails contain mental impressions of the Department's counsel. As for the remaining emails, Requester claims the Department's own filings indicate that the emails primarily concern the gathering of factual information for the purpose of issuing a press release, which does not implicate the Department's decisions regarding law or policymaking.

## II. Discussion

Under Section 305(a) of the RTKL, there is a presumption that all records[5] in the possession of a Commonwealth agency are public records unless: (1) the record is exempt under Section 708 of the RTKL; (2) the record is protected by a privilege; or (3) the record is exempt from disclosure under any other federal or state law or regulation or judicial order or decree. 65 P.S. § 67.305(a). The burden falls on the Commonwealth agency to prove, by a preponderance of the evidence,[6] that the record is exempt from disclosure. Section 708(a)(1) of the RTKL, 65 P.S. § 67.708(a)(1). One method of satisfying this burden is producing affidavits that provide justification for any claimed exemption. Office of Governor v. Scolforo,

---

[5] A record is defined under the RTKL as:

> [i]nformation, regardless of physical form or characteristics, that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency. The term includes a document, paper, letter, map, book, tape, photograph, film or sound recording, information stored or maintained electronically and a data-processed or image-processed document.

Section 102 of the RTKL, 65 P.S. § 67.102.

[6] A preponderance of the evidence is such evidence as would lead a factfinder to find that the existence of a contested fact is more probable than the nonexistence of the contested fact. Pa. Office of Attorney Gen. v. Bumsted, 134 A.3d 1204, 1210 n.12 (Pa. Cmwlth. 2016); Pa. State Troopers Ass'n v. Scolforo, 18 A.3d 435, 438-39 (Pa. Cmwlth. 2011).

65 A.3d 1095, 1103 (Pa. Cmwlth. 2013) (Scolforo I). However, conclusory affidavits alone will not satisfy the burden of proof an agency must sustain to show that a requester may be denied access to records under the RTKL. McGowan v. Pa. Dep't of Envtl. Prot., 103 A.3d 374, 381 (Pa. Cmwlth. 2014); Heavens v. Pa. Dep't of Envtl. Prot., 65 A.3d 1069, 1074 (Pa. Cmwlth. 2013). Furthermore, because the RTKL is considered remedial in nature and was "designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions," Pennsylvania State Police v. McGill, 83 A.3d 476, 479 (Pa. Cmwlth. 2014), in evaluating whether a record is exempt from disclosure, the exemptions must be narrowly construed so as not to frustrate the RTKL's remedial purpose, Scolforo I, 65 A.3d at 1100.

## A. Internal, predecisional deliberation exemption

As stated above, a record that fits one of the enumerated exceptions in Section 708 of the RTKL is not presumed to be a public record subject to disclosure. 65 P.S. § 67.305(a). Relevant to this case is the exception found in Section 708(b)(10)(i)(A), which exempts from disclosure a record that reflects:

> [t]he internal, predecisional deliberations of an agency, its members, employees or officials or predecisional deliberations between agency members, employees or officials and members, employees or officials of another agency, including predecisional deliberations relating to a budget recommendation, legislative proposal, legislative amendment, contemplated or proposed policy or course of action or any research, memos or other documents used in the predecisional deliberations.

65 P.S. § 67.708(b)(10)(i)(A).

5

In order to qualify for this exemption, the agency asserting it must show that the information sought to be withheld is: (1) internal; (2) prior to an agency decision or course of action; and (3) deliberative in nature. Twp. of Worcester v. Office of Open Records, 129 A.3d 44, 61 (Pa. Cmwlth. 2016). The inability to establish any of the three elements bars application of the exemption. Pa. Dep't of Educ. v. Bagwell, 114 A.3d 1113, 1123 (Pa. Cmwlth. 2015). Through affidavits or otherwise, "an agency must explain how the information withheld reflects or shows the deliberative process in which an agency engages during its decision-making." Twp. of Worcester, 129 A.3d at 61. Under this exception, only "confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice" are protected, not factual information. Id. "[P]urely factual material is severable and, in general, should be disclosed even when it is located within a document containing exempted predecisional deliberations." McGowan, 103 A.3d at 386. Factual material can qualify as deliberative information only if its "'disclosure would so expose the deliberative process within an agency that it must be deemed exempted,'" or stated another way, "'would be tantamount to the publication of the [agency's] evaluation and analysis.'" Id. at 387 (quoting Trentadue v. Integrity Comm., 501 F.3d 1215, 1228-29 (10th Cir. 2007)).

In Scolforo I, we noted that the General Assembly opted to use the term "reflect," which is broader than the term "reveal," when it crafted the exception. "The term *reflect* means 'mirror' or 'show,' while the term *reveal* means 'to make publicly or generally known' or, in other words, 'disclose.'" Scolforo I, 65 A.3d at 1101 (emphasis in original). Therefore, the exception "protects information where an agency demonstrates that the information merely *reflects*, or, in other words,

6

'mirrors' or 'shows,' that the agency engaged in the deliberative process; it does not require that an agency establish that the information itself *reveals* or 'discloses' deliberative communication." McGowan, 103 A.3d at 383 (emphasis in original). In addition, we concluded that Section 708(b)(10)(i)(A) "exempts all predecisional deliberations where agency officials and/or employees 'contemplate' or 'propose' a future 'course of action.'" Id.

Here, the Department claims that Items 1-12, 15-35, 38-41, and 43-67 are exempt under this provision because the emails were internal to the Department or internal to it and the Department of Health, were deliberative in nature, and were made prior to the Department's decision regarding how to handle press inquiries and/or respond to the recently published investigative report, "No Escape: Exposure to Toxic Coal Waste at State Correctional Institution Fayette" (No Escape Report), alleging increased health problems in prisoners housed at the facility. The Department further claims that the exemption is needed to ensure an open line of communication is maintained within the Department, which was essential to the Department's response to the important issue of inmate health.

Requester, on the other hand, asserts that the Department does not point to any "operative decision" to which the emails relate. Instead, Requester argues that the Department makes general assertions about unspecified decisions and/or policies. Requester also argues the Department admits the documents relate to fact-gathering, which would not be protected. Furthermore, Requester claims that to the extent the documents included discussion of how to respond to press inquiries, this is not the sort of policymaking that the exemption is designed to protect.

7

To determine whether the internal, predecisional deliberations exception applies, we begin with an *in camera* review of the records at issue. See Twp. of Worcester, 129 A.3d at 60 (finding *in camera* review of records is an appropriate means of assessing claims of predecisional deliberations and/or privilege). We agree with OOR that many of the records merely contain factual information without deliberation. This includes Items 1-12, 15-22, 27-28, 30-31, 34-35, 39, 41, 43, 46, 48-49, 52-54, 56-58, 60, 62-63, and 65-67, which are subject to disclosure in their entirety. We also agree with OOR's determination that Items 29, 32-33, and 55 are subject to limited disclosure, as set forth in detail in OOR's Final Determination. We therefore affirm as to these Items.

However, our review of the records indicates that OOR erred in concluding other records or portions thereof were merely factual and therefore subject to disclosure. Several documents contain communications between the Department and/or the Department of Health officials that reflect the Department's review and discussion of potential courses of action in responding to the No Escape Report and resulting press inquiries. Therefore, they are internal[7] and deliberative in nature to the extent they contemplate or propose a future course of action. McGowan, 103 A.3d at 383. In addition, they predate the Department's official response to the No Escape Report, thus, satisfying the other element of the exemption. Id.

To the extent requested documents which are public records contain discussion concerning how to respond to general media inquiries that are not

---

[7] Under Section 708(b)(10)(i)(A) of the RTKL, predecisional deliberations between two agencies, are also protected. 65 P.S. § 67.708(b)(10)(i)(A). Therefore, the Department's communications with the Department of Health does not destroy the privilege.

related to a pending investigation, we agree with Requester that, generally, such communications will not be protected. However, we are cognizant that such a determination is also fact specific, and, here, the record reflects that the very limited communications that do concern how to respond to the media inquiries are inextricably intertwined with the Department's internal, predecisional deliberations relating to a contemplated or proposed course of action – its ongoing investigation into the No Escape Report. Because the Department's approach to handling media inquiries regarding the No Escape Report is dependent upon the Department's overarching course of action regarding the pending investigation of the No Escape Report, in general, we find discussions among Department personnel on how to respond to requests from the media regarding the report are also protected. Similar to the documents in which only the Department's proposed course of action are discussed, which OOR agreed were protected, these emails pertaining to how to respond to media inquiries satisfy the three-part test for protection under the predecisional deliberations exception. They are internal to Department staff and clearly took place prior to any decision regarding what course of action the Department would take in response to the report; thus, they are predecisional. Furthermore, the emails are deliberative in nature because they relate to managing how the Department would publicly respond to the pending investigation regarding the No Escape Report, which garnered considerable publicity, while its internal investigation was underway.

Consistent with the above, we find the following documents[8] contain internal, predecisional deliberations, which are exempt from disclosure:

---

[8] Several of the items below involve the same or substantially similar email chains. As a result, several emails listed below have been repeated, resulting in multiple items being subject

*(Continued…)*

- Items 23-25 in their entirety.[9]
- Item 26 – email dated September 5, 2014 at 2:35 p.m. The remainder of the document is disclosable.
- Items 38 and 40 – emails dated September 16, 2014 at 8:13 a.m.[10] and 6:19 p.m. The remainder of the document is disclosable.
- Items 44 and 45 – emails dated September 16, 2014 at 8:13 a.m.[11] and 6:19 p.m. and email dated September 22, 2014 at 9:39 a.m. The remainder of the document is disclosable.
- Items 47, 50-51, and 59 – emails dated September 16, 2014 at 8:13 a.m.[12] and 6:19 p.m. and email dated September 25, 2014 at 9:11 a.m. The remainder of the document is disclosable.

We therefore reverse OOR's determination as to these records to the extent it is inconsistent with our holding the above.

## B.    Attorney-client privilege and/or work product

Section 305(a) of the RTKL also protects documents from disclosure that are privileged. 65 P.S. § 67.305(a). Under the RTKL, a "privilege" is defined as including the attorney-client privilege and the attorney-work product doctrine. Section 102 of the RTKL, 65 P.S. § 67.102.

To establish that a document is protected by the attorney-client privilege, the agency must show: (1) that the asserted holder of the privilege is or sought to become a client; (2) that the person to whom the communication was made is a member of the bar of a court or his or her subordinate; (3) that the communication relates to a fact of which the attorney was informed by the client, without the

---

to redaction. For instance, the September 5, 2014 email at 2:35 p.m. found in Item 26 is also common to Items 23 through 25. As reflected below, the September 16, 2014 emails at 8:13 a.m. and 6:19 p.m., the September 22, 2014 email at 9:39 a.m., and the September 25, 2014 email at 9:11 a.m. are also common to multiple items.

[9] OOR found only portions of Item 25 were protected.

[10] OOR found only the September 16, 2014 email at 8:13 a.m. was protected.

[11] OOR found only the September 16, 2014 email at 8:13 a.m. was protected.

[12] OOR found only the September 16, 2014 email at 8:13 a.m. was protected.

presence of strangers, for the purpose of securing an opinion of law, legal services, or assistance in a legal matter; and (4) that the claimed privilege has not been waived by the client. Bagwell, 114 A.3d at 1123-24; Chambersburg Area Sch. Dist. v. Dorsey, 97 A.3d 1281, 1289 (Pa. Cmwlth. 2014).

"The work-product doctrine, while closely related to the attorney-client privilege, provides broader protection." Bagwell, 114 A.3d at 1124. Instead of confidential communications with the client, the work-product doctrine protects "mental impressions, theories, notes, strategies, research and the like *created by an attorney* in the course of his or her professional duties." Heavens, 65 A.3d at 1077 (emphasis added). Similar to the predecisional deliberations exception, the attorney-client privilege and work product doctrine does not protect mere facts. Bagwell, 114 A.3d at 1124.

Here, the Department maintains that Items 61 and 64 are privileged because they are communications between Department's counsel and his client, wherein the attorney provides an opinion on the scope of a different RTKL request, explains the law itself and its exemptions, and then advises the client about the types of exemptions potentially applicable. Having reviewed the documents, we agree that the documents are privileged. The records involve correspondence between Theron R. Perez, chief counsel, and Department employees, and provide legal advice, as well as counsel's mental impressions concerning the request. Therefore, OOR erred in ordering that Items 61 and 64 be disclosed.

## III.   Conclusion

For the foregoing reasons, we reverse OOR's Final Determination as it relates to Items 23-26, 38, 40, 44-45, 47, 50-51, and 59, which we find are in whole or in part subject to the internal, predecisional deliberations exemption. We also reverse OOR's Final Determination as it relates to Items 61 and 64, which we find are protected by the attorney-client privilege and work product doctrine. OOR's Final Determination is affirmed in all other respects.

 

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Department of Corrections,                        :
                    Petitioner                  :
                                    :
                v.                        :   No. 1043 C.D. 2016
                                      :
Ben Fiorillo,                                     :
                  Respondent                :

# O R D E R

     **NOW**, May 1, 2017, the Final Determination of the Office of Open Records, dated June 2, 2016, is hereby **AFFIRMED**, in part, and **REVERSED**, in part.  The Order is **REVERSED** insofar as it relates to Items 23-26, 38, 40, 44-45, 47, 50-51, 59, 61, and 64, as set forth in the foregoing opinion.

_____
**RENÉE COHN JUBELIRER,** Judge