IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Neil Anand,                                      :
                          Petitioner             :
                                                 :
         v.                                      :    No. 318 M.D. 2023
                                                 :
Commonwealth of Pennsylvania,                    :    Submitted: September 9, 2024
Pennsylvania Insurance Department,               :
                          Respondent             :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge

## *OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                              FILED: October 11, 2024

Neil Anand (Requester) petitions for review of the July 11, 2023 Final Determination of the Office of Open Records (OOR), which denied his appeal from the March 15, 2023 decision of the Pennsylvania Insurance Department (Department) granting in part and denying in part his Right-to-Know Law[1] (RTKL) request (Request). Requester also seeks relief in our original jurisdiction in the form of a petition for writ of mandamus and/or petition to enforce pursuant to Pennsylvania Rule of Appellate Procedure (Pa.R.A.P.) 3761(b).

The Department has filed preliminary objections to the original jurisdiction portion of Requester's petition for review, arguing, among other things, that it must be dismissed due to this Court's lack of jurisdiction. The Department further argues that the OOR's Final Determination should be affirmed in total.

Upon review, we sustain the Department's preliminary objections in part, dismiss the original jurisdiction portion of the petition for review, and affirm the OOR.

_____
[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

# I. BACKGROUND AND PROCEDURAL HISTORY

On March 28, 2023, Requester submitted the Request to the Department seeking 24 categories of records relating to "Independence Blue Cross" and the "Independence Company" or "Independence Companies"[2] for the years 2009 through 2019. Specifically, the Request sought:

1. All documents of health insurance premiums, base prices and rate adjustments that were reviewed and/or calculated by [the] Department for individual and small businesses.

2. All documents of reviews or calculations for base rate or price including but not limited to medical costs ([*i.e.*,] how much and how often), operating costs ([*i.e.*,] salaries, rent, and marketing), taxes, fees, and profits.

3. All documents of reviews or calculations for rate adjustments including age, location, tobacco use, and family size.

4. All documents of determinations when reviewing rates of medical costs, non-medical costs, and operating costs where the proposed rates were excessive, inadequate, or discriminatory.

5. All documents of determinations when reviewing rates which were not approved by [the Department].

6. All Independence Company documents pertaining to failure to meet regulatory requirements, requiring rebates to be issued on premiums paid or where premium differences or miscalculations were paid back to insureds.

7. All documents of reviews or calculations of health insurance premiums, base prices[,] and rate adjustments that were reviewed and/or calculated by [the] Department factoring: [(]1) [r]ecovery of payments; [(]2) [r]ecovered [s]avings; [(]3) [c]laims [d]enied; [(]4) [c]laim [r]ecoveries;

---

[2] The Request defined the "Independence Companies" to include "Independence Blue Cross, Inc., Ameri[H]ealth HMO, Inc., Independence Blue Cross, LLC, Independence Health [G]roup, Inc., Independence Hospital Indemnity Plan, Inc., Keystone Health Plan East, Inc., QCC Insurance Company[], and Ameri[H]ealth Caritas." (Certified Record (C.R.), OOR Exhibit 1, p. 000072)

[(]5) [c]laim [o]ffsets; [(]6) [v]oluntary [r]estitution; [(]7) [p]harmacy [a]udits; [and (]8) [c]ourt[-o]rdered [r]estitution[.]

8. All Independence Company documents pertaining to any request for [a] rate increase of 15% or more before raising premiums in [ ] Pennsylvania.

9. All Independence Company documents pertaining to the 80/20 [r]ule where insurance companies are required to spend at least 80% of the money they take in from premiums on health care costs and quality improvement activities[,] and the other 20% can go to administrative, overhead, and marketing costs.

10. All Independence Company documents pertaining to [m]edical [l]oss [r]atio.

11. All Independence Company documents pertaining to reviews or calculations of health insurance premiums, base prices[,] and rate adjustments for large groups (usually more than 50 employees) where insurance companies are required to spend at least 85% of premiums on care and quality improvement.

12. All Independence Company documents pertaining to reviews or calculations of health insurance premiums and rate adjustments by [the] Center[s] for Medicare [and Medicaid] Services [(CMS)] for location, age, tobacco use, plan category, and whether the plan covers dependents.

13. All Independence Company documents pertaining to differences in competition, state and local rules, and cost of living with regard[] to rate submissions as well as determinations of adequate competition for the Independence Companies within [ ] Pennsylvania.

14. All Independence Company documents pertaining to reviews or calculations of health insurance premiums for [p]lan category: [b]ronze, [s]ilver, [g]old, [p]latinum, and [c]atastrophic.

15. All documents pertaining to an [u]nreasonable [r]ate [i]ncrease where [the] Department reviews a rate increase that is subject to review and determines that[ (]1) the rate

increase is an unreasonable rate increase, [(]2) [] the increase is an excessive rate increase, [(]3) [] there is an unjustified rate increase, or [(]4) [there is] an unfairly discriminatory rate increase.

16. All documents pertaining to an [u]nreasonable [r]ate [i]ncrease where [the] Department determined that the rate increase is an excessive rate increase or that the increase causes the premium charged for the health insurance coverage to be unreasonably high in relation to the benefits provided under the coverage.

17. All documents where [the] Department determined that the rate increase results in a projected medical loss ratio below the [f]ederal standard in the applicable market to which the rate increase applies, after accounting for any adjustments allowable under [f]ederal law.

18. All documents where [the] Department determined that one or more of the assumptions on which a rate increase by an Independence Company is not supported or based on substantial evidence.

19. All documents where [the] Department determined that the choice of assumptions or combination of assumptions on which the rate increase is based [] is unreasonable.

20. All documents where [the] Department determined that the rate increase is an unjustified rate increase because an Independence Company provided data or documentation to [the] Department in connection with the increase that was incomplete, inadequate or otherwise did not provide a basis upon which the reasonableness of an increase may be determined.

21. All documents where [the] Department determined that the rate increase is an unfairly discriminatory rate increase if the increase results in premium differences between insureds within similar risk categories that[] (1) [a]re not permissible under applicable state law; or (2) [i]n the absence of an applicable state law, do not reasonably correspond to differences in expected costs.

4

22. All documents where [the] Department reviewed, determined or approved of[] ([1]) [t]he reasonableness of the assumptions used by the Independence Company health insurance issuer to develop the proposed rate increase and the validity of the historical data underlying the assumptions; ([2]) [T]he Independence Company health insurance issuer's data related to past projections and actual experience; ([3]) [t]he Independence Company reasonableness of assumptions used to estimate the rate impact of the reinsurance and risk adjustment programs under [S]ections 1341 and 1343 of the Affordable Care Act[3][, 42 U.S.C. §§ 18061, 18063]; [or] ([4]) [t]he Independence Company health insurance issuer's data related to implementation and ongoing utilization of a market-wide single risk pool, essential health benefits, actuarial values and other market reform rules as required by the Affordable Care Act.

23. All documents where [the] Department reviewed, determined or approved that an Independence Company calculated: ([1]) [t]he impact of medical trend changes by major service categories; ([2]) [t]he impact of utilization changes by major service categories; ([3]) [t]he impact of cost-sharing changes by major service categories, including actuarial values; ([4]) [t]he impact of benefit changes, including essential health benefits and non-essential health benefits; ([5]) [t]he impact of changes in enrollee risk profile and pricing, including rating limitations for age and tobacco use under [S]ection 2701 of the Public Health Service Act[,[4] 42 U.S.C. § 300gg]; ([6]) [t]he impact of any overestimate or underestimate of medical trend for prior year periods related to the rate increase; ([7]) [t]he impact of changes in reserve needs; ([8]) [t]he impact of changes in administrative costs related to programs that improve healthcare quality; ([9])

---

[3] What is customarily referred to as the "Affordable Care Act" consists of two pieces of legislation: the Patient Protection and Affordable Care Act of 2010, Pub. L. No. 111–148, 124 Stat. 119 (2010) (codified as amended in scattered titles of the United States Code (U.S.C.)), and the Health Care and Education Reconciliation Act of 2010, Pub. L. No. 111–152, 124 Stat. 1029 (2010) (codified as amended in scattered titles of the U.S.C.).

[4] 42 U.S.C. §§ 201-300kk, -300mm-64.

[t]he impact of changes in other administrative costs; ([10]) [t]he impact of changes in applicable taxes, licensing or regulatory fees; ([11]) [m]edical loss ratio; ([12]) [t]he health insurance issuer's capital and surplus; ([13]) [t]he impacts of geographic factors and variations; ([14]) [t]he impact of changes within a single risk pool to all products or plans within the risk pool; [and] ([15]) [t]he impact of reinsurance and risk adjustment payments and charges under [S]ections 1341 and 1343 of the Affordable Care Act.

24. All documents where [the] Department reviewed, determined or approved that the [e]ffective [r]ate [r]eview [p]rogram for an Independence Company must provide: (1) [f]or proposed rate increases subject to review, access from its [website] to at least the information contained in [p]arts I, II, and III of the [r]ate [f]iling [j]ustification that CMS makes available on its [website] (or provide CMS's web address for such information), and have a mechanism for receiving public comments on those proposed rate increases, no later than the date specified in guidance by the [Insurance Commissioner]; [and] (2) [b]eginning with rates filed for coverage effective on or after January 1, 2016, for all final rate increases (including those not subject to review), access from its [website] to at least the information contained in [p]arts I, II, and III of the [r]ate [f]iling [j]ustification (as applicable) that CMS makes available on its [website] (or provide CMS's web address for such information), later than the first day of the annual open enrollment period in the individual market for the applicable calendar year.

(C.R., OOR Exhibit 1, pp. 000072-74.)

On March 15, 2023, the Department granted the Request in part, denied it in part, and further advised that certain responsive documents did not exist (Response). (*Id.*, p. 000079.) First, the Department granted the Request, in part, for Items 1-4, 7-14, 17, 23, and 24, and provided a link to the Department's website where the responsive, public documents could be reviewed. *Id.* The Department also denied the Request, in part, for the same items, asserting that some of the responsive records were

6

exempt from disclosure because they evidenced the Department's predecisional deliberations, contained trade secret or confidential proprietary information, and/or concerned the Department's noncriminal investigations. *Id. See* Sections 708(b)(10), 708(b)(11), and 708(b)(17) of the RTKL, 65 P.S. § 67.708(b)(10), (b)(11), (b)(17).

Next, with regard to Item 6, the Department granted the Request, in part, and provided another weblink where responsive documents could be reviewed. It also denied the Request under Item 6, in part, asserting that some of the responsive documents were exempt from disclosure because they, too, related to the Department's noncriminal investigations, 65 P.S. § 67.708(b)(17), and were confidential pursuant to 40 P.S. § 323.5(f).[5] (C.R., OOR Ex. 1, p. 000080.) With regard to Items 5, 15, 16, and 18-22, the Department advised that it does not have responsive records in its possession, custody, or control given the Department's six-month records retention policy for disapproval filings. *Id.*

Requester filed an appeal to the OOR on April 3, 2023, attached to which was a 64-page position statement. (C.R., OOR Exhibit 1, p. 000002.) The Department argued before the OOR that responsive records do not exist for Items 5, 15, 16, and 18-22 and that the records requested in Items 1-4, 6-14, 17, 23, and 24 were exempt from disclosure under the various RTKL exemptions identified in its Response. In support, the Department submitted sworn attestations of (1) Lindsi Swartz (Swartz Attestation), who is the Director of Life and Accident and Health Insurance in the Department's

---

[5] Section 905(f) of The Insurance Department Act of 1921 (Insurance Act), Act of May 17, 1921, P.L. 789, *amended* - added by the Act of December 18, 1992, P.L. 1496. Section 905(f) provides that, with certain delineated exceptions, "all working papers, recorded information, documents[,] and copies thereof produced by, obtained by or disclosed to the [D]epartment or any other person in the course of an examination made under this article shall be given confidential treatment and are not subject to subpoena and may not be made public by the [D]epartment . . . ." 40 P.S. § 323.5(f).

Office of Insurance Project Regulation, and (2) Dave Buono (Buono Attestation). Buono is the Deputy Insurance Commissioner for the Office of Market Regulation, which includes the Bureaus of Market Conduct, Enforcement, and Consumer Services. Upon request by the OOR for further clarification, the Department submitted a supplemental attestation of Swartz (Supplemental Swartz Attestation). Requester did not submit any further timely statements or evidence to the OOR.[6]

The OOR denied Requester's appeal in total, concluding that the Department sufficiently established via its several attestations that (1) the records responsive to Items 5, 15, 16, and 18-22 do not exist, (2) portions of the responsive records under Items 1-4, 7-14, 17,[7] 23, and 24 are exempt from disclosure under the predecisional deliberations exemption, and (3) the records responsive to Item 6 are exempt under the noncriminal investigation exemption.

Requester filed a petition for review in this Court on July 18, 2023, in which he invokes both our appellate and original jurisdiction. More specifically, Requester seeks both review and "enforcement" of the OOR's Final Determination and refers to the original jurisdiction portion of his petition as both a "petition to enforce" and an action in "mandamus." *See, e.g.*, Petition for Review, ¶¶ III(1), (3), (IV), (VII), (VIII). Requester seeks both reversal of the OOR's Final Determination and an order

---

[6] Requester submitted untimely exhibits and a supplemental position statement on July 3, 2023.

[7] Although the OOR does not include Item 17 in its discussion on pages 8 through 12 of the Final Determination, it acknowledged that the Department argued that the records requested in Item 17 were not disclosable under the predecisional deliberations exemption. *See* Final Determination, at 4-5. Accordingly, it is apparent that the OOR's omission of Item 17 in its discussion was a typographical error only, and we include it in our discussion where necessary.

or injunction directing the Department to disclose the withheld records.  *Id.*, ¶ XI.[8] Because it is a dual jurisdiction matter, this Court docketed Requester's petition for review as one filed in our original jurisdiction.

The Department filed preliminary objections to the original jurisdiction portion of the petition for review, contending that, because Requester seeks appellate review of the OOR's Final Determination, neither a petition to enforce pursuant to Pa.R.A.P. 3761(b) nor a mandamus action is appropriate in this Court.  The Department further argues that the OOR was correct in its disposition of Requester's appeal and, accordingly, requests affirmance.

## II. DISCUSSION[9]

### A. The Department's Preliminary Objections

We address first the Department's preliminary objections.  The Department objects to the original jurisdiction portion of the petition for review on the grounds that (1) this Court lacks jurisdiction over Requester's mandamus claim because a petition to enforce, and not an action in mandamus, is the appropriate vehicle under Pa.R.A.P. 3761(b) to enforce a final determination of the OOR (first preliminary objection); (2) Requester's mandamus claim fails as a matter of law (second preliminary objection); and (3) Requester's petition to enforce fails as a matter of law (third preliminary objection).

---

[8] Requester also asks in passing that "the trial court conduct an evidentiary hearing on [his] petition in accordance with the [F]inal [D]etermination, court fees, and civil penalties." (Petition for Review, ¶ XI.)

[9] Requester lists in his brief seven questions for review, all of which are fairly subsumed under the issues we identify and discuss *infra*.  Both Requester's petition for review and principal appellate brief contain hundreds of paragraphs and subparagraphs that, at times, are repetitious, rambling, and inconsistently numbered.  We have attempted as far as possible to glean Requester's arguments from his filings.

9

Pennsylvania Rule of Appellate Procedure 3761 governs enforcement proceedings in this Court. Subsection 3761(b) provides a mechanism for the enforcement of final determinations of the OOR. It provides that, "[w]hen a party to a proceeding before the [OOR] seeks to enforce a final determination regarding a record requested from a Commonwealth Agency, Legislative Agency, or Judicial Agency, it may initiate proceedings in the Commonwealth Court by filing a petition to enforce." Pa.R.A.P. 3761(b). The Note to Rule 3761(b) indicates that a petition to enforce is (1) the lone mechanism for enforcing OOR final determinations regarding RTKL requests to Commonwealth agencies, and (2) is to be filed in our appellate, rather than original, jurisdiction. Pa.R.A.P. 3761, Note. It further explains:

> Pa.R.A.P. 3761(b) provides the method for seeking compliance with a final determination of the [OOR] in the Commonwealth Court. This differs from proceeding in the courts of common pleas, where the method to obtain judicial review of alleged failure to comply with a final determination of the [OOR] may be an action in mandamus or other petition authorized by local rule. Use of this petition is appropriate *when the final determination was not appealed.* If an appeal was taken and the order affirmed by the Commonwealth Court, enforcement is not of the final determination of the [OOR], but rather of the order of the Commonwealth Court.

> Because the petition in Pa.R.A.P. 3761(b) is similar to the petition for enforcement of a government unit's own orders described in Pa.R.A.P. 3761(a), both are deemed to be addressed to the appellate jurisdiction of the Commonwealth Court, and thus appealable to the Supreme Court only by filing a petition for allowance of appeal.

*Id.* (emphasis added).

10

### 1. Mandamus

The Department first objects to this Court's "jurisdiction" over that portion of the petition for review that seeks a writ of mandamus in our original jurisdiction. The Department argues that a request for a writ of mandamus is inappropriate here because a petition to enforce is the only appropriate vehicle through which to seek enforcement in this Court of an OOR final determination. We agree.

Final determinations of the OOR compelling disclosure of records from local agencies may be enforced by writs of mandamus issued by the courts of common pleas. *Capinski v. Upper Pottsgrove Township*, 164 A.3d 601, 606 (Pa. Cmwlth. 2017) (where a final determination of the OOR concludes that requested documents are disclosable, a local agency has a ministerial duty to provide them to a requester; because the RTKL does not provide another enforcement remedy to a requester, a writ of mandamus is appropriate). Rule 3761(b), by contrast, authorizes the filing in this Court of petitions to enforce OOR final determinations compelling the production of records by Commonwealth, Legislative, and Judicial agencies. Mandamus, therefore, is not in this instance an appropriate or necessary remedy either in our original or appellate jurisdiction.

However, we see this defect in Requester's petition for review more as a failure to state a cognizable claim rather than a lack of "jurisdiction." This Court routinely considers requests for, and, where appropriate, issues writs of mandamus directing Commonwealth agencies to comply with clearly-established ministerial duties. *See* 42 Pa.C.S. § 761(a)(1) (conferring subject matter jurisdiction on this Court to preside over civil actions against the Commonwealth government). We therefore have "jurisdiction" over those sorts of actions. There are, nevertheless,

11

circumstances where mandamus is not an appropriate remedy against a Commonwealth agency for various reasons. In such circumstances, we will sustain a demurrer to a mandamus claim as legally deficient. *See, e.g.*, *Firearm Owners Against Crime – Institute for Legal, Legislative, and Educational Action v. Evanchick*, 291 A.3d 507, 516-17 (Pa. Cmwlth. 2023) (dismissing mandamus claims for failure to establish any enforceable, non-discretionary, ministerial duties on the part of the Pennsylvania State Police).

Here, and as set forth in the Department's second preliminary objection, the problem with Requester's mandamus request is not that we *cannot* hear such a claim, but, rather, that Requester has failed to establish either that mandamus is the appropriate remedy or that the essential elements of the claim are present here. A writ of mandamus is appropriate only where a petitioner establishes (1) a mandatory or ministerial act by a government agency; (2) the petitioner's clear right to compel performance of the act; (3) the respondent's present duty to perform the act; and (4) that another appropriate and adequate remedy does not exist. *Evanchick*, 291 A.3d at 515. Requester has not pled any facts that could establish any of these elements. The OOR's Final Determination is not "final" and, therefore, does not establish a mandatory or ministerial duty. The OOR also did not compel disclosure of any of the records withheld by the Department. Requester therefore has no clear right to performance and the Department no corresponding duty to perform. Lastly, Rule 3761(b) clearly provides for an alternative and adequate remedy—a petition to enforce—to obtain the relief Requester seeks. Thus, we conclude that Requester's mandamus claim fails as a matter of law and not for lack of jurisdiction. We accordingly will overrule the Department's first preliminary objection, sustain the second, and dismiss Requester's mandamus claim.

12

## 2.     Petition to Enforce

We also agree with the Department that Requester cannot, at this juncture, maintain a petition to enforce in this Court. It is clear that Requester's petition for review seeks *appellate* review of the OOR's Final Determination and specifically requests that we reverse it and order disclosure of the withheld records. Given the pendency of Requester's appeal, the OOR's Final Determination is not yet "final" for enforcement purposes, and a petition to enforce is premature. *See* Pa.R.A.P. 3761(b), Note. Moreover, the OOR denied Requester's appeal and did not direct disclosure of the withheld records. So even if the Final Determination was "final" at this point, which it is not, Requester could not seek its enforcement in any event. Finally, and on a more technical point, even if the petition to enforce was properly before us, such petitions are filed in our appellate, and not original, jurisdiction. *Id.*

For all of these reasons, we conclude that Requester's petition to enforce fails as a matter of law. We accordingly sustain the Department's third preliminary objection and dismiss this portion of the petition for review. Because we likewise have dismissed the mandamus claim, no claims in our original jurisdiction remain.

### B.     Review of the OOR's Final Determination

We turn next to our appellate review of the OOR's Final Determination.[10] When resolving disputes concerning the public nature of records sought by a requester

---

[10] We recently summarized our standard and scope of review in appeals relating to RTKL decisions of Commonwealth agencies:

> Pursuant to Chapter 13 of the RTKL, with respect to appeals relating to decisions of Commonwealth agencies, this Court is the ultimate factfinder in RTKL disputes. Accordingly, we owe no deference to the

**(Footnote continued on next page…)**

13

under the RTKL, we begin with a presumption of transparency and construe narrowly the statutory exemptions from disclosure. *American Civil Liberties Union v. Pennsylvania State Police*, 232 A.3d 654, 656-57 (Pa. 2020). Records in the possession of a Commonwealth agency are presumed to be public unless they are (1) exempted by Section 708 of the RTKL, 65 P.S. § 67.708; (2) protected by a privilege; or (3) exempted under any other federal or state law, regulation, or judicial order or decree. Section 305(a) of the RTKL, 65 P.S. § 67.305(a). Under Section 708(a)(1) of the RTKL, "[t]he burden of proving that a record of a Commonwealth agency or local agency is exempt from public access shall be on the Commonwealth agency or local agency receiving a request by a preponderance of the evidence." 65 P.S. § 67.708(a)(1).

### 1. Items 5, 15, 16, and 18-22

Items 5, 15, 16, and 18 through 22 of the Request all seek production of records related to rate filings that were disapproved by the Department on various grounds. The Department is required to review proposed rate increases and disapprove them if the Department finds that they are excessive, inadequate, or unfairly discriminatory. *See* Sections 303(a) and 304(b) of the Accident and Health Filing Reform Act, 40 P.S. §§ 3801.303(a), 3801.304(b).[11] The Department asserted in its

---

OOR's legal analysis or factfinding, as our standard of review of a final determination of the OOR is [*de novo*]. In addition, we are entitled to the broadest scope of review, covering all justiciable issues raised and preserved below. Unlike in other administrative agency contexts, we may substitute our own findings of fact for that of the agency. We have the discretion to conduct a hearing, or to remand to the OOR, to supplement the record.

*Pennsylvania Office of Governor v. Brelje*, 312 A.3d 928, 932 (Pa. Cmwlth. 2024) (internal citations, quotations, bracketing, and edits removed).

[11] Sections 303(a) and 304(b) of the Act of December 18, 1996, P.L. 1066, *as amended*.

14

Response, argued before the OOR, and argues again in this Court, that the requested records related to its rate disapprovals do not exist because it maintains a six-month retention policy for such records. Because the Request sought such records in 2023 for records obtained or generated between 2009 and 2019, the records were long ago destroyed. The Department also contends that it has no duty pursuant to Section 506(d) of the RTKL, 65 P.S. § 67.506(d), to contact any insurance companies that may retain some or all of these records because the Department did not contract with any of those companies to perform a governmental function on its behalf. It accordingly argues that it does not have "constructive" possession of any responsive records.

The OOR concluded that the Department carried its burden to establish that the records requested under these items did not exist:

> In support of [the Department's] argument, the Swartz Attestation states, in relevant part, as follows:
>
>> With regard to Item 5 above, the Department does not possess or have custody or control of any records within the scope of the [R]equest as the Department's approved record retention period for disapproved or withdrawn filings is [six] months from the date of that disposition. All of the records requested relate to the timeframe of 2009-2019[,] so any disapproved filings in that time period do not exist. Similarly, with regard to [I]tems 15, 16, 18, 19, 20, 21, and 22, the Department does not have any records within the scope of those requested items in its possession, under its custody or [in] its control[,] as the Department denies unreasonable, discriminatory, or other unacceptable rates. As such, filings with such rates are disapproved and are subject to the [six-]month retention period described above and no longer exist.
>
>> . . . .
>
>> Here, the Department has demonstrated, by a preponderance of the evidence, that [it] is not in

15

possession of records responsive to Items 5, 15, 16, and 18-22 of the Request because any responsive records would have been discarded according to the Department's records[-]retention policies. Therefore, the Department has met its burden of proof that it does not possess the records sought in Items 5, 15, 16, and 18-22 of the Request.

(Final Determination, at 7-8) (footnote and most internal citations and quotations omitted).

Upon review, we agree with the OOR. The burden of proving that a requested record does not exist lies with the agency responding to a RTKL request. *Hodges v. Pennsylvania Department of Health*, 29 A.3d 1190, 1192 (Pa. Cmwlth. 2011). An attestation by the individual who searched for responsive records may be sufficient to meet an agency's burden of proving a record's nonexistence. *Id.* Generally, relevant and credible testimonial affidavits or statements made under the penalty of perjury may be sufficient to carry an agency's burden to establish the non-existence or non-public nature of a record. *Sherry v. Radnor Township School District*, 20 A.3d 515, 520-21 (Pa. Cmwlth. 2011); *McGowan v. Pennsylvania Department of Environmental Protection*, 103 A.3d 374, 381 (Pa. Cmwlth. 2014). To be sufficient, the affidavits "must be detailed, nonconclusory, and submitted in good faith." *Payne v. Pennsylvania Department of Health*, 240 A.3d 221, 226 (Pa. Cmwlth. 2020) (quoting *Office of the Governor v. Scolforo*, 65 A.3d 1095, 1103 (Pa. Cmwlth. 2013)). In the absence of any evidence of bad faith, averments in an attestation should be accepted as true. *McGowan*, 103 A.3d at 382-83.

The Department submitted the Swartz Attestation, through which it explained that it maintains a six-month records retention policy for records relating to disapproved or withdrawn rate approval filings. The RTKL does not affect or vitiate such a policy. *See* Section 507 of the RTKL, 65 P.S. § 67.507 ("nothing in this act

16

shall be construed to modify, rescind or supersede any record retention policy established pursuant to law, regulation, policy or other directive"). Requester did not introduce any evidence before the OOR establishing that the Department maintains this policy in bad faith or that the records do in fact exist. Accordingly, there is nothing in the record undermining the credibility of the Swartz Attestation, which is sufficient to carry the Department's burden. The OOR therefore properly relied on it to conclude that the Department had carried its burden to establish that the requested records did not exist.

Requester does not appear to contend that the Department possesses the requested records, but, rather, argues that the Department should obtain the requested records from the insurance companies that submitted them to the Department. *See* Petition for Review, p. 19, ¶ 19. Although the OOR did not explicitly address the question, we agree with the Department that it was not required to contact any insurance companies that might possess one or more of the requested records. Pursuant to Section 506(d) of the RTKL, certain records of third-party entities are considered to be within the constructive possession of a government agency if the records relate to "governmental functions" performed for the agency:

> A public record that is not in the possession of an agency but is in the possession of a party with whom the agency has contracted to perform a governmental function on behalf of the agency, and which directly relates to the governmental function and is not exempt under this act, shall be considered a public record of the agency for purposes of this act.

65 P.S. § 67.506(d)(1). *See also Dental Benefit Providers, Inc. v. Eiseman*, 86 A.3d 932, 939 (Pa. Cmwlth. 2014) ("[N]on-exempt records of a third party may be subject to disclosure, provided the third party in possession has a contract with the agency to

17

perform a governmental function, and the information directly relates to the performance of that function.").

Here, there is no evidence in the record indicating that any of the insurance companies that submitted rate approval filings contract to provide any governmental services for the Department or that the requested records relate to any such services. Accordingly, we conclude that the Department was not obligated to obtain the requested records from any insurance companies.

We accordingly affirm the OOR's denial of Requester's appeal with regard to Items 5, 15, 16, and 18 through 22 of the Request.

### 2. Items 1-4, 7-14, 17, 23 and 24

Items 1 through 4, 7 through 14, 17, 23 and 24 of the Request seek records and information utilized by the Department in reviewing rate adjustments for health insurance premiums. In its Response, the Department provided a public weblink to certain records responsive and withheld others pursuant to several exemptions in the RTKL, including the "predecisional deliberations" exemption found at Section 708(b)(10), 65 P.S. § 67.708(b)(10). The OOR concluded that the Department carried its burden to establish the application of this exemption.

Section 708(b)(10)(i)(A) exempts from public disclosure a record that reflects

> [t]he internal, predecisional deliberations of an agency, its members, employees or officials or predecisional deliberations between agency members, employees or officials and members, employees or officials of another agency, including predecisional deliberations relating to a budget recommendation, . . . or course of action or any research, memos or other documents used in the predecisional deliberations.

18

65 P.S. § 67.708(b)(10)(i)(A). Thus, to withhold a record under Section 708(b)(10)(i)(A), an agency must establish that (1) the contents of the record are internal to the agency; (2) the contents of the record are deliberative; and (3) the deliberations reflected are predecisional, *i.e.*, occurred before an agency decision or course of action. *Office of Governor v. Davis*, 122 A.3d 1185, 1193 (Pa. Cmwlth. 2015). *See also Kaplin v. Lower Merion Township*, 19 A.3d 1209, 1214 (Pa. Cmwlth. 2011).

To establish that the contents of requested records are deliberative, an agency must establish with specific facts that they relate to the deliberation of a particular decision. *McGowan*, 103 A.3d at 383. The record must make recommendations or express opinions on legal or policy matters and cannot be purely factual in nature. *Payne*, 240 A.3d at 227; *Kaplin*, 19 A.3d at 1214. Further, although factual material contained in otherwise deliberative documents is required to be disclosed if it is severable from its context, *see McGowan*, 103 A.3d at 382-83, such material can still qualify as deliberative information if its "disclosure would so expose the deliberative process within an agency that it must be deemed excepted" or "would be tantamount to the publication of the agency's evaluation and analysis." *Id.* at 387 (citation and quotations omitted) (bracketing removed). If an agency seeks to establish the application of this exemption by way of affidavit, the affidavit "must be specific enough to permit the OOR or this Court to ascertain how disclosure of the [record] would reflect the internal deliberations." *Payne*, 240 A.3d at 226 (quoting *Scolforo*, 65 A.3d at 1104).

In support of this exemption, the Department submitted the Swartz Attestation, which states, in relevant part, as follows:

> The Bureau of Life and Accident and Health Insurance
> [(Bureau)] is responsible for reviewing and approving

19

the rates, policies and forms associated with life insurance and accident and health insurance sold in the Commonwealth of Pennsylvania. Through this process, life insurance and accident and health insurers submit their required rates, policies and forms for review and approval by the Department through an online filing portal known as the System for Electronic Rate and Form Filing, or "SERFF." For rates, this approval and review process involves an in-depth review of the rate by an actuarial employee of the Bureau in order to determine whether such rates are actuarily justified, sufficient, not excessive and fair to insurance consumers. . . .

This review process includes multiple internal discussions among Department personnel, including forms reviewers and actuarial staff[,] before making a decision to approve or disapprove the filing. Those internal discussions rely on all the information and records gathered as part of the investigation into the proprietary rates, policies or forms. These discussions and deliberations occurring about whether to approve or disapprove any particular rate or filing occur internal to the agency and do not involve any external third parties. All communications with the companies were disclosed[;] only communications within the Department seeking thoughts, analysis and considerations from individuals participating in the reviews were withheld.

. . . .

The excluded records with regards to Items 1, 2, 3, 4, 7, 8, 9, 10, 11, 12, 13, 14, 17, 23, and 24 that are not public involve records that reflect the internal, predecisional deliberations of the agency and/or have been identified by the submitting insurers as being confidential, proprietary information that is deemed trade secret. All other records associated with the filings within the scope of the Request are publicly available through the links identified above and provided to [] Requester.

(C.R., OOR Ex. 5, 000025-28) (internal citations omitted). The Department also submitted the Supplemental Swartz Attestation, which states, in relevant part, as follows:

> The Bureau [] is responsible for reviewing and approving the rates, policies and forms associated with life insurance and accident and health insurance sold in the Commonwealth of Pennsylvania. Through this process, life insurance and accident and health insurers submit their required rates, policies and forms for review and approval by the Department through an online filing portal known as . . . "SERFF." When insurance companies submit rate and filing information to the Department, they mark records confidential and proprietary. The records at issue here, actuarial memoranda, include company-specific formulas and analyses and were marked as confidential. In addition, these memoranda contain factual information and the facts contained therein are deliberative and integral to the deliberative process. Without them, the Department would be unable to review and analyze the insurance companies' rates and forms proposals to determine if they comply with applicable Pennsylvania law. The Department relies on these when making the decision whether to approve or disapprove any given filing.
>
> All communications with the companies were disclosed via the SERFF system. Only internal predecisional deliberations and communications within the Department seeking thoughts, analysis and considerations from individuals participating in the reviews, of which the actuarial memoranda are an integral part, were withheld.

(C.R., OOR Ex. 9, p. 000004.)

In concluding that the predecisional deliberations exemption applied, the OOR reasoned as follows:

> Here, the Request seeks information that the Department used in reviewing different rate adjustments for health

insurance premiums. The Department explains that "all documents and investigative materials, records of telephone calls, notes, exhibits, records, correspondence and reports created, developed and/or received in the process of the Department's review and analysis of insurance rates, policies and forms submitted for approval are maintained in the SERFF system." *See* Swartz Attestation, [C.R., OOR Ex. 5, pp. 000025-26]. The Department further explains that "[i]f an insurance product or rate is approved, then SERFF has a mechanism that allows for a publicly accessible portal that allows for public inspection of the approved rate, policy or form, as well the interactions between the insurer making the filing and the Department's reviewers and actuaries that approved the filing." *Id.* Finally, the Department explains that the "actuarial memoranda" submitted to the Department "include company-specific formulas and analyses and were marked as confidential" and that the Department "relies on this information when making decisions whether to approve or disapprove any given filing." [(]Supplemental Swartz Attestation[, C.R., OOR Ex. 9, p. 000004.)] *See also Highmark Inc. v. Voltz*, 163 A.3d 485, 493 (Pa. [Cmwlth.] 2017)[.]

Thus, the Department has demonstrated that those portions of the records responsive to Items 1-4, 7-14, [17,] 23, and 24 that have not been provided to [] Requester relate to "multiple internal discussions among Department personnel" that rely "on all the information and records gathered as part of the investigation into the proprietary of those rates, policies or forms." Accordingly, based on the evidence presented, the Department has met its burden of proof that these records not accessible via the Department's website are exempt from disclosure as internal, predecisional deliberations. 65 P.S. § 67.708(b)(10).

(Final Determination, at 9-12) (original bracketing and footnotes omitted; included bracketing supplied).

We again agree with the OOR's analysis. The Swartz Attestation and Supplemental Swartz Attestation thoroughly and adequately explain the records

22

withheld by the Department and the "predecisional deliberations" to which they relate. The Attestations together show that the requested records are internal to the Department and contain deliberative and predecisional analysis and opinions, and Requester again did not introduce in the record any evidence of bad faith or other grounds for concluding that the Attestations were not credible. The Department provided access to voluminous documents requested under Items 1-4, 7-14, 17, 23, and 24, including documents and communications exchanged with the insurance companies. The Department withheld only the actual internal deliberative communications "seeking thoughts, analysis[,] and considerations from individuals participating in the reviews." (C.R., OOR Ex. 9, p. 000004.) The fact that these records might also contain records submitted from the insurance companies does not defeat the application of the exemption. *See Davis*, 122 A.3d at 1193 ("The origination of records from outside an agency does not preclude application of the RTKL exceptions.") (citation omitted).

Further, this is not a situation where an agency submitted a generalized affidavit that included only a list of subjects to which the withheld records might relate to establish that the records were "deliberative." *See Scolforo*, 65 A.3d at 1104. This also is not a case where an agency withheld certain "scores" assigned to applications it was considering while simultaneously disclosing the scores for other applications, none of which reflected actual internal deliberations of the agency. *See Payne*, 240 A.3d at 227-28. Rather, here, the Department included detailed attestations explaining its deliberation process and how the withheld records would reflect its decision-making, all the while disclosing volumes of non-deliberative records related to the rate approval process. We agree with the OOR and the Department that disclosing the

23

withheld records "would be tantamount to the publication of the agency's evaluation and analysis." *McGowan*, 103 A.3d at 387.

For these reasons, we affirm the OOR's Final Determination with regard to Items 1-4, 7-14, 17, 23, and 24 of the Request.

### 3. Item 6

Item 6 of the Request seeks records showing the "failure to meet regulatory requirements, requiring rebates to be issued on premiums paid or where premium differences or miscalculations were paid back to insureds." (C.R., OOR Exhibit 1, p. 000072.) The Department responded that the requested records were exempt under the noncriminal investigation exemption found at Section 708(b)(17) of the RTKL, 65 P.S. § 67.708(b)(17). The Department argued before the OOR and argues again in this Court that these records are exempt because they relate to investigative files associated with its handling of complaints and referrals submitted to the Department to investigate potential violations of, and compliance with, insurance laws and regulations.

Section 708(b)(17) exempts from disclosure "[a] record of an agency relating to a noncriminal investigation[.]" 65 P.S. § 67.708(b)(17). Pertinently, included within this exemption are "[c]omplaints submitted to an agency[,]" "[i]nvestigative materials, notes, correspondence and reports[,]" and records that, if disclosed, would "[r]eveal the institution, progress or result of an agency investigation, except the imposition of a fine or civil penalty, the suspension, modification or revocation of a license, permit, registration, certification or similar authorization[.]" *Id.*, § 67.708(b)(17)(A)(i)-(ii), (vi)(A). To establish the applicability of the noncriminal investigation exemption, an agency must establish that "a systematic or searching inquiry, a detailed examination, or an official probe" was conducted

24

regarding a noncriminal matter. *Pennsylvania Department of Health v. Office of Open Records*, 4 A.3d 803, 810-811 (Pa. Cmwlth. 2010). The inquiry, examination, or probe must be conducted as part of an agency's official duties and pursuant to its legislatively-granted factfinding and investigative powers. *Id.* at 814; *Pennsylvania Department of Public Welfare v. Chawaga*, 91 A.3d 257, 259 (Pa. Cmwlth. 2014). However, the investigation must surpass the agency's routine performance of its duties, and the agency cannot rely merely on broad statements that an investigation occurred to satisfy its burden to prove the applicability of the exemption. *Pennsylvania Public Utility Commission v. Friedman*, 293 A.2d 803, 828 (Pa. Cmwlth. 2023).

Here, in support of the noncriminal investigation exemption, the Department submitted the Buono Attestation, which describes the Department's investigative process at length:

> The Bureau of Consumer Services is responsible for assisting consumers and investigating consumer complaints that involve various insurance issues pursuant to the [Department]'s duties legislatively prescribed to it under [Section 201 of the Insurance Act,] 40 P.S. § 41, which established the Department and charged it with "the execution of the laws of this Commonwealth in relation to insurance." Investigating complaints from consumers and, as part of those investigations, assessing whether licensees of the Department have committed potential violations of insurance laws and regulations[,] is part of the Department's responsibility for the "execution" of the laws imposed by the legislature pursuant to 40 P.S. § 41. In addition, the Department is legislatively authorized to conduct investigations of licensees pursuant to the legislatively enacted regulatory scheme for the regulation of the Commonwealth's insurance market pursuant to [the Insurance Act]. As such, the Department has been legislatively authorized to conduct investigations into consumer complaints in order to determine licensee compliance with the Commonwealth's insurance laws.

25

The Department conducts an investigation into each and every complaint received by the Department. Part of the standard investigative inquiry into the complaint involves a determination of whether the Department has jurisdiction over the matter alleged. Any time that the Department investigates a complaint, the assigned investigator conducts a systematic and searching inquiry into the allegations of the complainant and the activities of the involved insurance licensee, and a determination of whether the Department has jurisdiction over the matters and allegations involved. The Department lacks authority to conduct criminal investigations and prosecutions, so any such investigation of a regulated individual or entity conducted by the Department is noncriminal in nature.

As a result of the Department's initial investigation of a consumer complaint, if jurisdiction is determined to lie outside of the Department, whenever possible, a referral is made to another agency that might have jurisdiction to handle the complaint. If jurisdiction is found to be within the purview of the Department, the Bureau [of Consumer Services] makes inquires of insurance companies and other licensees or individuals involved in the claims being investigated. The Department collects all relevant information to determine whether Pennsylvania insurance laws and/or standard insurance practices have been violated. If a violation is found, the complainant and the insurance company are advised of [the Department's] findings and appropriate action is taken. The investigation file may be referred to other divisions within [the Department], including the Bureau of Licensing and Enforcement[,] for further investigation or enforcement action. All documents and investigative materials, records of telephone calls, notes, exhibits, records, correspondence[,] and reports created, developed and/or received in the process of the Department's investigation of complaints are maintained in the investigative file.

. . . .

If a violation is found, the matter can be resolved through a number of methods depending upon the nature of the

26

violation. The investigations within this unit can result in the imposition of fines, penalties, restitution, licensure action and other remedies allowable under the Commonwealth's insurance laws and regulations. If no violations are found, investigations can be closed with no action. Also, warning letters could be issued, a [c]onsent [o]rder could be negotiated with the involved licensee, or the matter could be referred to the Office of Chief Counsel for further legal action and/or the filing of an [o]rder to [s]how [c]ause. Because the Department lacks jurisdiction over criminal matters, if violations of the [C]rimes [C]ode[12] are potentially involved, referrals could be made to an appropriate law enforcement agency. All documents and investigative materials, records of telephone calls, notes, exhibits, records, correspondence and reports created, developed and/or received in the process of the Department's investigation of complaints are maintained in the investigative file. In addition, all records relating to these investigations are subject to the confidentiality afforded by [Section 679-A of the Insurance Act, added by the Act of December 6, 2002, P.L. 1183,] 40 P.S. [§] 310.79, which states that any "documents, materials or other information in the control or possession of the [D]epartment which is furnished by an insurer or licensee . . . or which is obtained by the [D]epartment in an investigation . . . shall be confidential by law and privileged" and "shall not be subject to the [RTKL]." However, all [c]onsent [o]rders resulting from investigations and [o]rders from the Insurance Commissioner resulting from the filing of an [o]rder to [s]how [c]ause are all public in nature and are posted on the [] Department's website.

. . . .

[With regard to Item 6 of the Request,] [r]egardless of whether the records relating to any "failure to meet regulatory requirements" resulted from an investigation conducted by the Bureau of Consumer Services, the Bureau

---

[12] 18 Pa.C.S. §§ 101-9546.

27

of Licensing and Enforcement or the Bureau of Market Actions, any underlying investigatory records are considered confidential and may be statutorily protected from disclosure. Further, final action taken as a result of an investigation conducted by the Bureau of Licensing and Enforcement or the Bureau of Market Actions would be made publicly available by the posting on the Department's website of the resulting [c]onsent [o]rder, decision of the Insurance Commissioner resulting from an [o]rder to [s]how [c]ause or a final examination report and associated [c]onsent [o]rder from a market conduct examination.

(C.R., OOR Ex. 5, pp. 000031-34.)

The OOR concluded as follows with regard to Item 6:

The Department has the power and authority to execute the laws of the Commonwealth of Pennsylvania in relation to insurance. *See* 40 P.S. § 41. Additionally, the Department is statutorily authorized to respond to complaints of suspected insurance fraud and unfair trade practices, investigate claims, and report findings to the appropriate law enforcement agency. [Section 1142(3), (4), and (7) of the Insurance Act, added by the Act of December 6, 2002, P.L. 1183,] 40 P.S. §[] 325.42(3), (4) & (7); [Section 7 of the Unfair Insurance Practices Act,[13]] 40 P.S. § 1171.7.

In this instance, [] Requester does not challenge the attestation provided by the Department, which shows that the Department conducts authorized investigations into every complaint it receives ([*i.e.*,] those relating to the "failure to meet regulatory requirements, requiring rebates to be issued on premiums paid or where premium differences or miscalculations were paid back to insureds"). Because all records obtained or produced by the Department in an investigation are confidential pursuant to the Insurance [] Act, and the Department conducts an investigation into every complaint it receives, the Department has met its burden of proving that complaints and related investigative files are

---

[13] Act of July 22, 1974, P.L. 589.

28

related to noncriminal investigations conducted pursuant to the Department's legislatively granted authority.

(Final Determination, at 15-16) (some internal citations and quotations omitted).

We agree. Even construing the exemption narrowly, as we must, *see Pennsylvania Public Utility Commission v. Nase*, 302 A.3d 264, 269 (Pa. Cmwlth. 2023), we nevertheless conclude that the Department established via the Buono Attestation that the records requested in Item 6 related to the Independence Companies' failure to comply with insurance regulatory standards concern searching inquiries of noncriminal matters conducted by the Department pursuant to its official, legislatively-granted investigative powers. Requester again has not introduced any evidence undermining the veracity of the Buono Attestation, and we see no reason to find it not credible.

The confidentiality of the Department's investigations of consumer complaints and other potential violations of the Commonwealth's insurance laws serves an important public interest in encouraging reporting and avoiding a chilling affect on insurance consumers who observe violations or are subject to misconduct. We consistently have recognized the importance of this interest in RTKL cases where Commonwealth agencies conduct similar searching inquiries into potential violations of federal and state laws that affect the public. *See, e.g.*, *Department of Health*, 4 A.3d at 811-12 (records related to surveys and inspections conducted of nursing homes to determine legal compliance were exempt from disclosure as noncriminal investigation records); *Michak v. Department of Public Welfare*, 56 A.3d 925, 928-29 (Pa. Cmwlth. 2012) (daycare provider license inspection summaries created by the Department of Public Welfare exempt from disclosure as documents related to noncriminal investigations); *Pennsylvania Public Utility Commission v. Gilbert*, 40 A.23d 755, 760-62 (Pa. Cmwlth. 2012) (gas utility safety inspection reports exempt as noncriminal

29

investigation records because they involve searching examinations of a gas utility's operations and compliance with applicable federal and state pipeline safety regulations).

Further, we find the Department's investigations of the Independence Companies' insurance law violations to be more than mere routine, inspection-like inquiries that we have concluded do not qualify for the noncriminal investigation exemption. *See, e.g.*, *Pennsylvania Department of Labor and Industry v. Darlington*, 234 A.3d 865, 877 (Pa. Cmwlth. 2020) (records related to routine field inspections did not qualify for noncriminal investigation exemption). Rather, the investigative materials withheld by the Department relate to specific investigations prompted by consumer complaints or otherwise and can result in the imposition of penalties and fines, among other sanctions. These investigations, including those of the Independence Companies, are not merely routine inspections conducted in the ordinary course of the Department's regulatory duties. Importantly, the final outcomes of such investigations, including consent orders and/or Department reports, are published on the Department's website.

Finally, and in any event, Section 679-A of the Insurance Act explicitly provides that documents, materials, or information obtained by the Department in an investigation pursuant to the Insurance Act "shall be confidential by law and privileged, shall not be subject to the [RTKL], shall not be subject to subpoena[,] and shall not be subject to discovery or admissible in evidence in any private civil action." 40 P.S. § 310.79. Thus, to the extent that the Department withheld any documents received as part of its investigations into the Independence Companies' insurance law violations, they are independently exempt from disclosure under Section 679-A.

Accordingly, we affirm the OOR's conclusion that the requested records in Item 6 are exempt from disclosure pursuant to the noncriminal investigation exemption. We further conclude that any documents, materials, or information obtained by the Department pursuant to its investigations of the Independence Companies' insurance law violations is confidential and not disclosable pursuant to Section 679-A of the Insurance Act.

### 4.      Bad Faith

Lastly, we note that Requester includes in his statement of questions involved a request for attorneys' fees and costs, and also includes stray references to "bad faith" and the general standard applicable to bad faith claims under the RTKL. *See* Requester's Br. at 7, 61-62. However, other than generically alleging that the Department has acted in bad faith by not turning over all of the requested records, Requester has not engaged in any meaningful analysis or advocacy explaining *how* the Department engaged in bad faith in denying his Request in part, particularly given that both the OOR and now this Court have concluded that the partial denial was legally proper. *See id.* at 61-62. Further, although Requester included a stray allegation of bad faith in his appeal to the OOR, *see* C.R., OOR Ex. 1, p. 000045, our review of Requester's several-hundred-page submissions to the OOR reveals that he did not meaningfully develop the issue to any degree; nor did the OOR make any findings or conclusions regarding bad faith. Given those facts, and given that Requester has failed to adequately raise and brief the issue in this Court, we conclude that it is waived. *See* Pa.R.A.P. 2119; *City of Philadelphia v. Berman*, 863 A.2d 156, 161 (Pa. Cmwlth. 2004) (a party's failure to develop an issue in the argument section of its appellate brief waives the issue). Even if the issue was not waived, Requester clearly has not carried

31

his burden to establish bad faith with any record evidence. *Uniontown Newspapers, Inc. v. Pennsylvania Department of Corrections*, 185 A.3d 1161, 1170-71 (Pa. 2018).

## III.    CONCLUSION

Based on the foregoing, we overrule the Department's first preliminary objection, sustain its second and third preliminary objections, and dismiss the original jurisdiction portion of Requester's petition for review. We further affirm the OOR's Final Determination.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Neil Anand,                                    :
                    Petitioner                 :
                                               :
        v.                                     :    No. 318 M.D. 2023
                                               :
Commonwealth of Pennsylvania,                  :
Pennsylvania Insurance Department,             :
                    Respondent                 :

## *ORDER*

AND NOW, this 11th day of October, 2024, for the reasons set forth in the foregoing memorandum opinion, we OVERRULE the Pennsylvania Insurance Department's (Department) first preliminary objection, SUSTAIN the Department's second and third preliminary objections, and DISMISS the original jurisdiction portion of Neil Anand's Petition for Review, with prejudice. We further AFFIRM the July 11, 2023 Final Determination of the Pennsylvania Office of Open Records in its entirety.

_____
PATRICIA A. McCULLOUGH, Judge