IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Terry Mutchler,                 :
         Petitioner       :
                       :
        v.               :    No. 1714 C.D. 2024
                       :
Pennsylvania Public Utility    :    Submitted: March 3, 2026
Commission (Office of Open    :
Records),                 :
        Respondent   :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE STELLA M. TSAI, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                  FILED: April 6, 2026

Terry Mutchler (Requester) petitions for review of the December 4, 2024 Final Determination of the Office of Open Records (OOR), which denied her appeal from the partial denial of a Right-to-Know Law (RTKL)[1] request (Request) she submitted to the Pennsylvania Public Utility Commission (PUC).

Upon review, we affirm.

## I.     Background and Procedural History

### A.     The Request and the PUC's Response

Requester submitted the Request to the PUC on or about August 8, 2024.[2] Therein, she requested the following records:

> 1.     A copy of the following Section 1329 Applications (Chapter 13 of the Pennsylvania [Public] Utility Code[,] 66

---

[1] Act of February 14, 2009, P.L. 6, 65 P.S. §§ 67.101- 67.3104.

[2] The Request is dated August 7, 2024, and was received via email by the PUC on August 8, 2024. (Reproduced Record (R.R.) at 15a, 18a.)

Pa.C.S. [§] 1329) submitted to the [PUC] for the acquisition of the following municipal systems:

    a.    Butler Area Sewer Authority

    b.    Borough of Brentwood

    c.    East Whiteland Township

    d.    Towamencin Township

[(Section 1329 Acquisition Applications)]. In addition to these Section 1329 "*Valuation of Acquired Municipal Water/Wastewater System*" submissions to the PUC, I am also seeking correspondence, to include emails or texts, between the following staff of the Office of the Governor and the Commissioners of the [PUC] related to these four projects as follows:

**A.**    **Governor's Executive Staff:**

    i.  Mr. Joseph Lee

    ii.  Ms. Dana Fritz

    iii. Mr. Abkair Hossain

    iv. Mr. Sam Robinson

**B.**    **PUC Commissioners:**

    i.  Ms. Kimberly Barrow

    ii.  Mr. Stephen DeFrank

    iii. Mr. Ralph Yanora

    iv. Ms. Kathryn L. Zerfuss

    v.  Mr. John Coleman, Jr.

This request includes correspondence between the PUC Commissioners as well. In order to assist in your search, I am identifying the **subject matter and the time frame** for these records as follows:

    a.    **Subject matter of the RTKL:** Records related to these submissions for acquisition by the Pennsylvania American Water Company or Aqua Pennsylvania, Inc., or Aqua Pennsylvania Wastewater, Inc.

b.      **Timeframe for this request** can be limited to: January 21, 2023[,][3] to present.

Please be advised that this [Request] includes correspondence between the Commissioners themselves, as well as between the Commissioners and the Office of the Governor staff identified related to the above-identified 1329 submissions.

(R.R. at 15a-16a) (emphasis in original).

After a 30-day extension, *see* Section 902(a), (b)(2) of the RTKL, 65 P.S. § 67.902(a), (b)(2), on September 16, 2024, the PUC granted the Request in part and denied it in part. The PUC granted the Request as to all of the Section 1329 Acquisition Applications themselves, notifying Requester that they all are publicly available on the PUC's website and providing the link where they could be found. (R.R. at 21a.) The PUC further advised Requester of the name and docket number for each of the Applications and explained how to search for them on the website. *Id.*

As to the requested communications, the PUC granted the Request as to some of the communications, but denied the Request to the extent that some of the responsive records contained "internal, predecisional deliberations of the [PUC] and its staff," which were exempt pursuant to Section 708(b)(10)(i)(A) of the RTKL, 65 P.S. § 67.708(b)(10)(i)(A) (the Withheld Records). *Id.*

**B.      Proceedings Before the OOR**

Requester appealed the partial denial to the OOR, arguing that (1) the PUC did not establish that the Withheld Records reflected the predecisional deliberations of the PUC under Section 708(b)(10)(i)(A); (2) the PUC did not conduct a proper search; and (3) the PUC did not prove that it redacted all records capable of

---

[3] In reciting the content of the Request, the OOR's Final Determination includes a date range of January 21, 2024 through the date of the Request. (R.R. at 91a.) The correct starting date is January 21, 2023.

3

redaction pursuant to Section 706 of the RTKL, 65 P.S. § 67.706.[4] (R.R. at 13a.) Requester requested that the OOR conduct an *in camera* review. *Id.* at 14a.

In its position statement to the OOR, the PUC argued that it conducted a good faith search for records and validly invoked the Section 708(b)(10)(i)(A) exemption. In support, the PUC submitted six affidavits, five from the PUC Commissioners and one from Rosemary Chiavetta, Esq., the PUC Secretary and Open Records Officer (ORO Chiavetta). (R.R. at 45a-46a.) The PUC explained that, upon receiving the Request, ORO Chiavetta immediately conducted a search for responsive records and instructed the five Commissioners to do the same. *Id.* In response,

> [t]he Commissioners conducted a search of their respective PUC Outlook email accounts and text messages contained in their respective PUC-issued smartphones for all correspondence responsive to the Request. Specifically, the Commissioners searched for all emails and text messages from January 21, 2023 forward that mentioned any of the four Section 1329 Acquisition Applications specified in the Request and that were shared amongst the Commissioners and also between each Commissioner and any of the four

---

[4] Section 706 of the RTKL provides as follows:

> If an agency determines that a public record, legislative record or financial record contains information which is subject to access as well as information which is not subject to access, the agency's response shall grant access to the information which is subject to access and deny access to the information which is not subject to access. If the information which is not subject to access is an integral part of the public record, legislative record or financial record and cannot be separated, the agency shall redact from the record the information which is not subject to access, and the response shall grant access to the information which is subject to access. The agency may not deny access to the record if the information which is not subject to access is able to be redacted. Information which an agency redacts in accordance with this subsection shall be deemed a denial under Chapter 9.

65 P.S. § 67.706.

4

members of the Governor's Executive Staff named in the Request.

(R.R. at 46a.)  In her supporting affidavit, ORO Chiavetta explained her duties and functions as the ORO for the PUC and her efforts to search for responsive records.  She attested:

> Upon receiving the Request, I conducted a search for responsive records which included sending a copy of the request to each of the five PUC Commissioners, Chairman Stephen M. DeFrank, Vice Chair Kimberly M. Barrow, Commissioner Kathryn L. Zerfuss, Commissioner John F. Coleman, and Commissioner Ralph V. Yanora, and their respective staff on August 8, 2024[,] with instructions to search for any emails, texts, or correspondence within their possession related to the Section 1329 Acquisition Applications for Butler Area Sewer Authority, Borough of Brentwood, East Whiteland Township, and Towamencin Township between themselves and any of the following members of the Governor's Executive staff: Joseph Lee, Dana Fritz, Abkair Hossain, and Sam Robinson.  I also directed the Commissioners that their search must include correspondence between Commissioners, as well.

(Chiavetta Affidavit, ¶ 3; R.R. at 69a.)

In response to ORO Chiavetta's directives, all five PUC Commissioners conducted searches for responsive records.  Each Commissioner thereafter submitted an affidavit (together with the Chiavetta Affidavit, the Affidavits) explaining his or her search, as follows:

> [A] search [was conducted] of [each Commissioner's] PUC Outlook email account and text messages contained in [each Commissioner's] PUC-issued smartphone for all correspondence responsive to the Request.  Specifically, [each Commissioner] searched for all emails and text messages from January 21, 2023, forward that mentioned any of the four Section 1329 Acquisition Applications specified in the Request and that were shared between [the]

5

> Commissioners, including the Chairman and Vice Chairman, and also between [ ] any of the four members of the Governor's Executive Staff named in the Request.

(DeFrank Affidavit, ¶ 7, R.R. at 55a; Barrow Affidavit, ¶ 8, R.R. at 58a; Zerfuss Affidavit, ¶ 7, R.R. at 62a; Yanora Affidavit, ¶ 2, R.R. at 65a; Coleman Affidavit, ¶ 2, R.R. 67a.) Each Commissioner also described his or her duties with the PUC and the results of their records search. Commissioners Yanora and Coleman attested that they did not find any responsive records. (Yanora Affidavit, ¶ 3, R.R. at 65a; Coleman Affidavit, ¶ 3, R.R. at 67a.) Chairman DeFrank, Vice Chair Barrow, and Commissioner Zerfuss attested that they located responsive records and gave them to ORO Chiavetta, who submitted the records to the PUC's Law Bureau for review. (Chiavetta Affidavit, ¶ 4-9, R.R. at 70a.)

More specifically, Chairman DeFrank, Vice Chair Barrow, and Commissioner Zerfuss all attested that they were assigned to review the Section 1329 Acquisition Application of Pennsylvania-American Water Company regarding the Butler Area Sewer Authority prior to the public meeting on November 9, 2023, at which the Commissioners voted on the application. (DeFrank Affidavit, ¶¶ 3-4, R.R. at 55a; Barrow Affidavit, ¶¶ 4-5, R.R. at 58a; Zerfuss Affidavit, ¶¶ 3-4, R.R. at 61a-62a.) Vice Chair Barrow and Commissioner Zerfuss also attested that they were assigned to review Chairman DeFrank's testimony to the Senate Democratic Policy Committee regarding Section 1329 applications, which testimony was presented to the Senate Democratic Policy Committee on January 22, 2024. (Barrow Affidavit, ¶ 6, R.R. at 58a; Zerfuss Affidavit, ¶ 5, R.R. at 62a.) All three Commissioners located responsive records relating to one or both of these subjects and submitted the records to ORO Chiavetta. (DeFrank Affidavit, ¶¶ 8-9, R.R. at 55a; Barrow Affidavit, ¶¶ 9-19, R.R. at 58a-59a; Zerfuss Affidavit, ¶¶ 8-16, R.R. at 62a-63a.)

With regard to the legal review of the responsive records, ORO Chiavetta attested as follows:

10. On September 16, 2024, I conferred with attorneys from the PUC's Law Bureau to review all of the responsive records. Upon review, it was noted that some of the responsive records included draft documents that contained recommended edits and comments.

11. The responsive records included drafts of the following documents:

a. Prepared Testimony of Stephen M. DeFrank, Chairman, Pennsylvania Public Utility Commission before a public hearing of the Pennsylvania Senate Democratic Policy Committee, January 22, 2024[.]

b. Statement of Vice Chair Kimberly Barrow in *Application of Pennsylvania-American Water Company, pursuant to 66 Pa.C.S §§ 1102 and 1329 . . .* , Docket No. A-2022-3037047.

12. The draft documents identified in Paragraph 11 contained edits and comments from the Commissioners and their respective staff which, if disclosed, would reveal the predecisional deliberations amongst the Commissioners.

13. Accordingly, the responsive records listed in Paragraph 11 are exempt from disclosure under Section 708(b)(10)(i)(A) of the RTKL.

14. The final versions of the responsive records identified in Paragraph 11 are all publicly available on the [PUC's] website.

15. Additionally, other responsive records included emails in which the Commissioners exchanged comments soliciting one another's input on the responsive records identified in Paragraph 11, which were attached to some of these emails.

16. Accordingly, the emails identified in Paragraph 15 are likewise exempt from disclosure under Section 708(b)(10)(i)(A) of the RTKL.

(Chiavetta Affidavit, ¶¶ 10-16, R.R. at 70a-71a; *see also* Barrow Affidavit, ¶¶ 9-13, R.R. at 58a-59a; Zerfuss Affidavit, ¶¶ 8-11, R.R. at 62a-63a).

Based on the Affidavits, the PUC argued that its partial denial pursuant to Section 708(b)(1)(i)(A) was sufficiently specific and detailed under Section 903[5] of the RTKL, 65 P.S. § 67.903, because it specified the exact reason for withholding certain documents and cited to the pertinent exemption in the RTKL. (R.R. at 47a-51a.) The PUC further explained that the Withheld Records are draft documents and email discussions among PUC Commissioners that contain proposed edits to, and comments about, drafts of (1) the prepared testimony of Chairman DeFrank before a public hearing of the Pennsylvania Senate Democratic Policy Committee on January 22, 2024, regarding Section 1329 applications and associated legislative initiatives; and (2) the public statement of Vice Chair Barrow at the PUC's public hearing on November 9, 2023, concerning the purchase of the Butler Area Sewer Authority by Pennsylvania-American Water Company (PUC Docket No. A-2022-3037047).[6] (R.R. at 49a-50a.) The PUC further advised that the final versions of both documents are available on the

---

[5] Section 903 of the RTKL governs denials of RTKL requests and requires that denials be in writing and include (1) a description of the requested record, (2) the specific reasons for the denial with citations to legal authority, (3) the identity and contact information of the open records officer authorizing the denial, (4) the date of the denial, and (5) the procedure to appeal the denial. 65 P.S. § 67.903(1)-(5).

[6] The comments and edits of Vice Chair Barrow's statement were exchanged between Vice Chair Barrow and Commissioner Zerfuss on November 8, 2023. The email exchanges between Vice Chair Barrow and Commissioner Zerfuss about Chairman DeFrank's testimony took place on January 18 and 19, 2024. *See* Barrow Affidavit, ¶¶ 15-16, R.R. at 59a; Zerfuss Affidavit, ¶¶ 14-15, R.R. at 63a.)

PUC's website. (R.R. at 51a.) Lastly, the PUC explained that, because the Withheld Records were composed entirely of drafts and email discussions, they could not be redacted under Section 706 of the RTKL.

In her position statement to the OOR, Requester argued that the PUC's partial denial of the Request based on the Section 708(b)(10)(i)(A) exemption was insufficiently specific and lacked adequate citations to, and discussions of, legal authority. (R.R. at 75a-78a.) Requester further argued that the Affidavits submitted by the PUC did not contain sufficient information explaining how the withheld records contained deliberative information. *Id.* at 79a. As to the PUC's search, Requester argued that there was no evidence establishing that it was conducted in good faith. *Id.* at 80a-81a. With regard to the Section 708(b)(10)(i)(A) exemption, Requester requested that the OOR direct the production of a privilege log and further conduct an *in camera* review to determine whether the withheld records were both "predecisional" and "deliberative" and whether they could be redacted under Section 706 of the RTKL. *Id.* at 83a-85a. Requester also requested a hearing. *Id.* at 85a-86a.

The OOR issued its Final Determination on December 4, 2024, in which it both denied Requester's requests for a hearing and/or *in camera review* and denied Requester's appeal in its entirety. As to the requests for a hearing and *in camera* review, the OOR concluded that the evidence submitted by the PUC was both sufficient and credible to address the issues raised by Requester. *Id.* at 93a. On the merits, the OOR first concluded that the six Affidavits submitted by the PUC were sufficient to establish that the PUC conducted a good faith search and that no additional responsive records were in its possession. *Id.* at 93a-96a. Specifically, the OOR concluded:

> The PUC's [affidavits] are authored by the PUC's ORO, the Chairman of the PUC, the Vice Chair of the PUC, and three Commissioners of the PUC, who all attest that they conducted a good faith search and no additional responsive

9

records exist in response to the Request or that responsive records have been provided to [ORO] Chiavetta[.] The evidence is credible and is sufficient to meet PUC's burden of proof that a good faith search was performed and that no additional records responsive to the Request exist in its presence, custody or control.

(R.R. at 96a.)

The OOR secondly concluded that the PUC demonstrated that the withheld records were exempt from disclosure under Section 708(b)(10)(i)(A) of the RTKL as reflecting the PUC's internal, predecisional deliberations. The OOR cited the portions of the Chiavetta, Barrow, Zerfuss, and DeFrank Affidavits that explained the nature and content of the withheld records and, after reciting the legal standards applicable to the Section 708(b)(10)(i)(A) exemption, concluded as follows:

> The evidence credibly demonstrates that the [W]ithheld [R]ecords ([*i.e.*], draft documents and email discussions) are internal to the PUC, contain proposed edits and comments reflecting recommendations or expressing opinions on policy matters, and relate to a course of action on Vice Chair Barrow's [s]tatement on [Pennsylvania American Water Company's] Section 1329 Acquisition Application of the Butler Area Sewer Authority and Chairman DeFrank's prepared testimony before the Senate Democratic Policy Committee. Accordingly, the PUC has demonstrated that the withheld records contain the internal, predecisional deliberations of the PUC and are not subject to access under Section 708(b)(10) of the RTKL.

(R.R. at 99a) (citation omitted).

Requester now petitions for review in this Court.[7]

---

[7] On May 9, 2025, the PUC filed an Application to Dismiss Requester's Petition for Review due to Requester's failure to timely file a principal appellate brief. By memorandum and order entered May 19, 2025, this Court granted Requester, *nunc pro tunc*, an extension of time to file her brief. She did so on May 23, 2025.

## II.  **Issues**[8]

Requester presents three questions for our review: (1) whether the OOR erred in concluding that withheld draft documents and emails qualify as internal, predecisional deliberations; (2) whether the OOR erred in concluding that the PUC carried its burden of proof via the Affidavits; and (3) whether the OOR erred in concluding that the PUC conducted a good faith search for responsive records. Requester also seeks attorneys' fees and civil penalties for bad faith under Section 1304 and 1305 of the RTKL, 65 P.S. §§ 67.1304, 67.1305, arguing that the PUC did not conduct a "proper and basic search of emails." (Requester's Br. at 21.)  For relief, Requester asks the Court to reverse the OOR's Final Determination or, in the alternative, remand to the OOR for *in camera review* or a full evidentiary hearing on the issues, including bad faith.

---

[8] Our review of appeals from OOR Final Determinations relating to RTKL requests submitted to Commonwealth agencies is as follows:

> Pursuant to Chapter 13 of the RTKL, with respect to appeals relating to decisions of Commonwealth agencies, this Court is the ultimate factfinder in RTKL disputes.  Section 1301 of the RTKL, 65 P.S. § 67.1301. Accordingly, we owe no deference to the OOR's legal analysis or factfinding, as our standard of review of a final determination of the OOR is *de novo*.  In addition, we are entitled to the broadest scope of review, covering all justiciable issues raised and preserved below.  Unlike in other administrative agency contexts, we may substitute our own findings of fact for that of the agency.  We have the discretion to conduct a hearing, or to remand to the OOR, to supplement the record.

*Pennsylvania Office of the Governor v. Brelje*, 312 A.3d 908, 932 (Pa. Cmwlth. 2024) (internal editing, quotations, and most citations omitted).  Because we may here conduct our review on the record from the OOR, we decline to either hold a hearing or remand to the OOR for supplementation of the record.

### III. Discussion

#### A. Good Faith Search

For ease of analysis, we address Requester's last issue first. Requester argues that the PUC did not conduct a good faith search for responsive records[9] because it did not conduct its search "through its own technology department, or through the use of an outside vendor. Rather, PUC simply relied upon each Commission[er] searching his or her own devices and emails with set parameters." (Requester Br. at 16.) Requester asserts that the Commissioners' Affidavits are "conclusory" and do not indicate whether the "Commissioners who searched their own devices and emails have special expertise or understanding of forensic computer technology," whether the Commissioners "searched deleted or archived messages," or whether the Commissioners utilized messaging technology other than emails or text messages. *Id.* Requester therefore insists that the PUC has not established that it performed a search for records that was "designed to reasonably identify and capture responsive records." *Id.* (citing, in part, *Chambersburg Area School District v. Dorsey*, 97 A.3d 1281, 1291-93 (Pa. Cmwlth. 2014)). Requester posits that, to satisfy its obligation to conduct a good faith search, the PUC should have (1) identified specific search terms that were uniform among all of the Commissioners; (2) identified its step-by-step process in conducting the search; (3) identified the specific government and personal electronic devices that were searched; and (4) described the details of the search without using the same "lock-step" language in each of the Commissioners' Affidavits. *Id.* at 17-19. Failing to do these things, Requester argues, constitutes "bad faith." *Id.* at 19.

The PUC argues in response that the OOR properly concluded that it conducted a good faith search that satisfies the requirements of Section 901 of the

---

[9] In her brief, Requester describes the Request as being submitted to the PUC in October 2024. (Requester Br. at 15.) Requester sent the Request on August 7, 2024. (R.R. at 15a.)

12

RTKL, 65 P.S. § 67.901. The PUC contends that its Affidavits are non-conclusory, thorough, and sufficiently detailed to explain (1) the role of each Commissioner and ORO Chiavetta; (2) the scope and method of the searches; (3) the records found; (4) the deliberative, predecisional nature of the Withheld Records; and (5) that the Withheld Records were adequately reviewed by ORO Chiavetta and the PUC's Law Bureau. (PUC Br. at 33-37.) We agree.

Section 901 of the RTKL provides, in pertinent part, that "[u]pon receipt of a written request for access to a record, an agency shall make a good faith effort to determine if the record requested is a public record, legislative record or financial record and whether the agency has possession, custody or control of the identified record, and to respond as promptly as possible under the circumstances existing at the time of the request." 65 P.S. § 67.901. We've expounded on this language and described an agency's duty as follows:

> Upon receipt of a request, an open records officer must make a good faith effort to determine whether: (1) the record is a public record; and, (2) the record is in the possession, custody, or control of the agency. Section 901 also includes the duty to perform a reasonable search for records in good faith. As part of a good faith search, the open records officer has a duty to advise all custodians of potentially responsive records about the request, and to obtain all potentially responsive records from those in possession.

> When records are not in an agency's physical possession, an open records officer has a duty to contact agents within its control, including third-party contractors. Under Section 506(d) of the RTKL, 65 P.S. § 67.506(d), the agency is required to take reasonable steps to secure the records from the contractor and then make a determination if those records are exempt from disclosure.

> After obtaining all potentially responsive records, an agency has the duty to review the records and assess their public

13

nature under Sections 901 and 903 of the RTKL. It is axiomatic that an agency cannot discern whether a record is public or exempt without first obtaining and reviewing the record.

*Uniontown Newspapers, Inc. v. Pennsylvania Department of Corrections*, 185 A.3d 1161, 1171-72 (Pa. Cmwlth. 2018) (most internal citations, quotations, and editing omitted). In determining whether a requested record is public and subject to disclosure, an agency's open records officer has a duty to direct RTKL requests to other appropriate persons in the agency and to inquire of its public officials as to whether any of them have possession, custody, or control of a responsive record. *Mollick v. Township of Worcester*, 32 A.3d 859, 874-75 (Pa. Cmwlth. 2011) (citing *In re: Silberstein*, 11 A.3d 629, 633-34 (Pa. Cmwlth. 2011)). After receiving potentially responsive records, the open records officer then must determine whether any or all of them are public or exempt from disclosure. *Id.* at 875.

We agree with the OOR that the PUC established with sufficient evidence that it conducted a good faith search for responsive records and that no other responsive records exist. Contrary to Requester's assertions, the Affidavits submitted by the PUC are not conclusory or boilerplate. Rather, they specify in detail the searches conducted by ORO Chiavetta and all five of the PUC Commissioners. They include the date range of the records searched, the devices searched, the pertinent subject matters, the individuals conducting the searches, and the chain of custody of the responsive records found. More specifically, ORO Chiavetta explains in her Affidavit that she instructed all five PUC Commissioners and their staff to search for emails, texts, or any other "correspondence" related to any of the identified Section 1329 Acquisition Applications exchanged among the Commissioners and between them and the other individuals identified in the Request. (Chiavetta Affidavit, ¶ 3, R.R. at 69a.)

14

In response, all five Commissioners submitted affidavits explaining that they conducted the requested searches for records, dated in the specified timeframe, in their PUC Outlook email accounts and their PUC-issued smartphones. Three out of the five Commissioners found responsive records, and two did not. Those responsive records are explained in both the Commissioners' Affidavits and the Chiavetta Affidavit, and they were turned over to ORO Chiavetta for legal review. Contrary to Requester's assertions, the fact that the Affidavits do not recite any utilization of the PUC's technology department, describe the Commissioners' forensic computer technology expertise, or reveal the use of uniform search terms does not render the searches or the Affidavits in which they are described insufficient.

As correctly stated by the OOR, "an agency must show, through detailed evidence submitted in good faith from individuals with knowledge of the agency's records, that it has conducted a search reasonably calculated to uncover all relevant documents." (R.R. at 94a) (citing, in part, *Mollick*, 32 A.3d at 875). Here, the Request identifies (1) specific and pending Section 1329 Acquisition Applications, of which all of the Commissioners were aware, and (2) particular participants to the requested communications. The Request therefore was specific enough to permit the Commissioners to conduct sufficient searches of their devices without utilizing specialized IT support or specified search terms. Had the Request sought more generic records reflecting PUC "business" or Commissioner "activity" during a longer timeframe, Requester's arguments might carry more weight. Here, however, it is clear from the Affidavits that both ORO Chiavetta and the five Commissioners knew what to look for and, based on the information contained in the Affidavits, they did so.

In sum, the searches performed by the Commissioners were specific and explained in detail in their Affidavits, which were not generic or conclusory. Given

15

the subjects and parameters of the Request, we must conclude that the PUC conducted a good faith search for responsive records. Requester's arguments to the contrary are without merit.

Moreover, although Requester suggests that there *might* be additional responsive documents, she has not presented any *evidence* indicating that anything in the Affidavits is untrue or incomplete. *See McGowan v. Department of Environmental Protection*, 103 A.3d 374, 382-83 (Pa. Cmwlth. 2014) (where there is no evidence that an agency has acted in bad faith, averments in its affidavits should be accepted as true). *Cf. Department of Labor and Industry v. Earley*, 126 A.3d 355 (Pa. Cmwlth. 2015) (RTKL requester provided direct evidence via personal knowledge that emails sought in RTKL request existed notwithstanding the Department of Labor and Industry's assertions in affidavits that the emails did not exist). Thus, without any evidence suggesting to the contrary, the OOR did not err in accepting the PUC's detailed Affidavits as establishing that no additional responsive records exist.

**B.    Section 708(b)(10) Exemption for Internal, Predecisional Deliberations**

As to Requester's argument that the PUC failed to carry its burden to establish that the withheld records are exempt under Section 708(b)(10)(i)(A) of the RTKL, we begin with the principle that,

> [w]hen resolving disputes concerning the public nature of records sought by a requester under the RTKL, we begin with a presumption of transparency and construe narrowly the statutory exemptions from disclosure. Records in the possession of a Commonwealth agency are presumed to be public unless they are (1) exempted by Section 708 of the RTKL, (2) protected by a privilege; or (3) exempted under any other federal or state law, regulation, or judicial order or decree.

16

*Anand v. Pennsylvania Insurance Department*, 329 A.3d 1, 12 (Pa. Cmwlth. 2024) (citations omitted). An agency receiving a RTKL request bears the burden of proving that the record is exempt by a preponderance of the evidence. A preponderance of the evidence is evidence that would lead a factfinder to find that the existence of a contested fact is more probable than its nonexistence. *Office of the District Attorney of Philadelphia. v. Bagwell*, 155 A.3d 1119, 1130 (Pa. Cmwlth. 2017).

Relevant and credible testimonial affidavits may be sufficient to satisfy an agency's burden to prove the applicability of an exemption from disclosure. *McGowan*, 103 A.3d at 381 (citing *Heavens v. Department of Environmental Protection*, 65 A.3d 1069, 1073 (Pa. Cmwlth. 2013)). Nevertheless, the affidavits must be "detailed, nonconclusory, and submitted in good faith," and "absent evidence of bad faith, the veracity of an agency's submissions explaining reasons for nondisclosure should not be questioned." *Id.* (quoting *Office of the Governor v. Scolforo*, 65 A.3d 1095, 1103 (Pa. Cmwlth. 2013) (*en banc*)). The affidavits, together with any other evidence, must be specific enough to permit a court to determine how the production of withheld records would show that they fell within a proffered exemption. *Davis v. Pennsylvania State Employees Retirement System*, 284 A.3d 1307, 1311 (Pa. Cmwlth. 2022) (citing *Carey v. Pennsylvania Department of Corrections*, 61 A.3d 367, 375-79 (Pa. Cmwlth. 2013)).

We recently described the contours of the Section 708(b)(10)(i)(A) predecisional deliberations exemption as follows:

> Section 708(b)(10)(i)(A) exempts from public disclosure a record that reflects
>
>> [t]he internal, predecisional deliberations of an agency, its members, employees or officials or predecisional deliberations between agency members, employees or officials and members, employees or officials of another agency,

> including predecisional deliberations relating to a budget recommendation, . . . or course of action or any research, memos or other documents used in the predecisional deliberations.
>
> 65 P.S. § 67.708(b)(10)(i)(A). Thus, to withhold a record under Section 708(b)(10)(i)(A), an agency must establish that (1) the contents of the record are internal to the agency; (2) the contents of the record are deliberative; and (3) the deliberations reflected are predecisional, *i.e.*, occurred before an agency decision or course of action. *Office of Governor v. Davis*, 122 A.3d 1185, 1193 (Pa. Cmwlth. 2015). *See also Kaplin v. Lower Merion Township*, 19 A.3d 1209, 1214 (Pa. Cmwlth. 2011).
>
> To establish that the contents of requested records are deliberative, an agency must establish with specific facts that they relate to the deliberation of a particular decision. *McGowan*, 103 A.3d at 383. The record must make recommendations or express opinions on legal or policy matters and cannot be purely factual in nature. *Payne* [*v. Pennsylvania Department of Health*], 240 A.3d [221,] 227 [(Pa. Cmwlth. 2020)]; *Kaplin*, 19 A.3d at 1214. Further, although factual material contained in otherwise deliberative documents is required to be disclosed if it is severable from its context, *see McGowan*, 103 A.3d at 382-83, such material can still qualify as deliberative information if its "disclosure would so expose the deliberative process within an agency that it must be deemed excepted" or "would be tantamount to the publication of the agency's evaluation and analysis." *Id.* at 387 (citation and quotations omitted) (bracketing removed). If an agency seeks to establish the application of this exemption by way of affidavit, the affidavit "must be specific enough to permit the OOR or this Court to ascertain how disclosure of the [record] would reflect the internal deliberations." *Payne*, 240 A.3d at 226 (quoting *Scolforo*, 65 A.3d at 1104).

*Anand*, 329 A.3d at 15. This exemption is designed to benefit the public, and not the agencies that assert it, because "if government agencies were forced to operate in a

fishbowl, the frank exchange of ideas and opinions would cease and the quality of administrative decisions would consequently suffer." *McGowan*, 103 A.3d at 381 (citation and quotation omitted).

Requester argues that the PUC failed to carry its burden to establish the applicability of the Section 708(b)(10)(i)(A) exemption because (1) the PUC's Affidavits did not specifically indicate whether any of the withheld documents or emails were *not* disclosed to third parties; [10] (2) the Affidavits do not establish that the records relate to the deliberation of a particular decision; and, generally, (3) the PUC's Affidavits are "thinly veiled boilerplate statements that amount to a generic determination or conclusory statement lacking the specificity required by law[.]" (Requester Br. at 10-14, 15) (citation and internal quotations omitted).[11]

The PUC argues in response that its six Affidavits sufficiently establish all three prerequisites of the Section 708(b)(10)(i)(A) exemption, namely, that all of the Withheld Records (1) are internal to the PUC; (2) predate and concern two PUC actions or decisions; and (3) are deliberative in their content. We agree.

---

[10] The PUC contends that Requester has waived by failing to include in her petition for review the argument that the PUC failed to establish the applicability of the Section 708(b)(10)(i)(A) exemption because it did not specify that the withheld records consisted only of internal communications. *See* PUC Br. at 16; *see also* Pa.R.A.P. 1513(d); *Maher v. Unemployment Compensation Board of Review*, 983 A.2d 1264, 1268 (Pa. Cmwlth. 2009). Although the Petition for Review does not contain this argument verbatim, we think it is fairly subsumed under several other issues that pertain to the Section 708(b)(10) exemption. *See generally* Petition for Review, ¶¶ 7-10. Thus, we decline to find waiver in this respect.

[11] In arguing that the Commissioners' Affidavits were insufficient, Requester asserts that the OOR erred in concluding that the PUC carried its burden via the Affidavits "since the requested data already exists, the DOH must query its database and produce it." (Requester Br. at 12.) Neither the Department of Health nor any already-existing "data" are at issue in this case.

19

First, Requester's argument that the PUC's Affidavits do not establish that the Withheld Records are "internal" because the Affidavits do not specifically aver that the records were not forwarded to third parties outside the PUC is without merit. To be "internal," records must reflect deliberations either (1) among an agency's members, employees, or officials, or (2) between two agencies. *Davis*, 122 A.3d at 1193; *McGowan*, 103 A.3d at 381-82. It is clear from the Affidavits that all of the Withheld Records are internal communications among three of the PUC Commissioners and/or their staff concerning the pre-finalized public statement of Vice Chair Barrow and the draft Senate testimony of Chairman DeFrank. There is no indication that any person outside of the PUC was copied on the communications or contributed to or commented on the edits to the drafts. There further is no evidence that any of the emails or drafts were forwarded on to any outside parties prior to the completion of the final versions.

Second, as to the "deliberative" and "predecisional" requirements, Requester does not say specifically how the PUC failed to establish either element. Rather, she argues generally that the PUC's Affidavits fail "to provide specific facts showing how the information relates to deliberation of a particular decision." (Requester Br. at 12.) We find, however, that the Affidavits are detailed, specific, and sufficient in both respects. First, as to establishing deliberation, the pertinent Affidavits together specify that all of the Withheld Records concern either (1) Vice Chair Barrow's public statement at a PUC public hearing on November 9, 2023, regarding a specific Section 1329 Acquisition Application on which the PUC Commissioners subsequently voted; or (2) Chairman DeFrank's prepared testimony given to the Pennsylvania Senate regarding Section 1329 applications generally. The Withheld Records reflect the edits of, and comments regarding, drafts of those documents circulated among PUC Commissioners shortly prior to the final versions becoming

20

public.[12] The Affidavits also specify when the communications were sent, identify the senders and recipients, and describe in detail the nature of the communications together with the drafts and edits that were circulated. (Barrow Affidavit, ¶¶ 11-19, R.R. at 58a-60a; Zerfuss Affidavit, ¶¶ 10-18, R.R. at 62a-63a; Chiavetta Affidavit, ¶¶ 9-16, R.R. at 70a-71a; DeFrank Affidavit, ¶ 8, R.R. at 55a.) There is no indication that the PUC withheld purely factual information, and both the drafts themselves and the comments on them would reflect the PUC Commissioners' "confidential deliberations of law or policymaking, reflecting opinions, recommendations, or advice[.]" *Smith on behalf of Smith Butz, LLC v. Pennsylvania Department of Environmental Protection*, 161 A.3d 1049, 1067 (Pa. Cmwlth. 2017) (quoting *Carey*, 61 A.3d at 378). *Cf. Payne*, 240 A.3d at 227-28 (raw scores of applicants for medical marijuana grower-processor permits were not "deliberative" in that they did not disclose evaluation committee's deliberations or deliberative process).

As to the "predecisional" requirement, Vice Chair Burrow's statement concerning a particular Section 1329 Acquisition Application pending before the PUC clearly constitutes a "decision" of the PUC Commissioners in its most basic form. *See* https://www.puc.pa.gov/pcdocs/1804876.pdf (last visited April 6, 2026). Likewise, Chairman DeFrank's Senate testimony, although not strictly a "decision" of the PUC, was testimony given to the Senate Democratic Policy Committee regarding Section 1329 applications generally, the Section 1329 applications received by and currently pending before the PUC, and the PUC's position on current legislative initiatives in the General Assembly. *See* https://www.puc.pa.gov/media/2741/defrank-senate_dempolicycomm_sec1329-012224.pdf (last visited April 6, 2026). Such testimony fits within the express language of Section 708(b)(10)(i)(A)'s protections

---

[12] The PUC provides links in its brief where the final versions of both Vice Chair Barrow's statement and Chairman DeFrank's testimony may be found. *See* PUC Br. at 22 n.8.

21

afforded to "deliberations related to a budget recommendation, legislative proposal, legislative amendment, contemplated or proposed policy or course of action . . . ." 65 P.S. § 67.708(b)(10)(i)(A). *See also id.* § 67.708(b)(10)(i)(B) (protecting predecisional deliberations concerning the "strategy to be used to develop or achieve the successful adoption of a budget, legislative proposal or regulation").

Last, and contrary to Requester's characterizations, the Affidavits are neither boilerplate nor conclusory. They contain adequate detail to permit this Court "to ascertain how disclosure of the [Withheld Records] would reflect the internal deliberations" of the PUC Commissioners, and we discern no error on the part of the OOR in finding them to be sufficient evidence establishing the Section 708(b)(10)(i)(A) exemption. *Compare Scolforo*, 65 A.3d at 1103-04 (conclusory, nondetailed affidavits that included a list of subjects to which withheld records might relate insufficient to establish applicability of predecisional deliberations exemption).

## IV.  Conclusion

Because we conclude that the PUC conducted a good faith search for records responsive to the Request and validly asserted and established with adequate proof the applicability of the Section 708(b)(10)(i)(A) exemption, we affirm the OOR's Final Determination.[13]

_____
PATRICIA A. McCULLOUGH, Judge

---

[13] Given our disposition, we need not address Requester's assertion of bad faith or her associated requests for attorneys' fees and civil penalties pursuant to Sections 1304 and 1305 of the RTKL. For the same reason, we need not address the PUC's argument that Requester waived those issues on appeal by failing to include them in her petition for review. (PUC Br. at 16-18.)

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Terry Mutchler,                          :
        Petitioner              :
                                :
        v.                      :   No. 1714 C.D. 2024
                                :
Pennsylvania Public Utility              :
Commission (Office of Open               :
Records),                                :
        Respondent              :

## ***ORDER***

AND NOW, this 6th day of April, 2026, it is ORDERED that the December 4, 2024 Final Determination of the Pennsylvania Office of Open Records is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge